CITY OF EXCELSIOR SPRINGS to the use, etc., Respondent, v. HENRY ETTENSON, Appellant.

Kansas City Court of Appeals, July 2, and October 1, 1906.

1. MUNICIPAL CORPORATIONS: Officers: Taxbills: Presumption. Courts, in the absence of proof to the contrary, assume that municipal authorities have proceeded according to law and not in violation thereof; taxbills are prima facie evidence of their regularity and validity and the liability of the property charged therewith.

2. ———: ———: ———: Restrictions. Courts do not look upon special assessments with disfavor, but since they are an exercise of the sovereign power of taxation, courts will carefully enforce provisions founded in the laws authorizing their imposition that are designed to protect the rights of the property-owner, that he may not be the victim of dishonest practices on the part of public officers.

3. ———: **Fourth Class Cities: Street Improvements: Competitive Bidding: Ordinances.** The charters of fourth-class cities do not require street improvements to be let at public outcry, but require the city to specify in the ordinance providing for the improvements in what manner the work should be done; and when by ordinance the city specifies competitive bidding, it becomes a condition precedent to the letting of the contract and a levy of a special assessment to pay for the improvement.

4. ———: ———: ———: ———: ———: **Description of Work.** An ordinance providing for a street improvement failed definitely to designate one of the dimensions of the work, to-wit, its width. *Held,* this was an essential condition and the omission left the bidders in the dark as to the extent of the improvement they would be required to make; and the assessment and taxbills issued for the work were void.

5. ———: ———: ———: **Curbing: Grade: Ordinance.** An ordinance for curbing in the street is assailed because there is no provision fixing the grade or level at which the curbing is to be made, and therefore left to the city engineer the matter of the grade; the ordinance did provide that the street should be curbed according to the established grade. *Held,* the provision was sufficient since it referred to a previously adopted grade.

6. ———: ———: **Curbing: Taxbills: Statutory Construction.** *Held,* that cities of the fourth class have power to issue taxbills against abutting property for curbing placed in the street· pursuant to an ordinance.

7. ———: ———: ———: **Time: Ordinance: Contract: Competitive Bidding.** A contract for curbing a street imposed a daily penalty as liquidation for damages for every day the work was unfinished after the time prescribed for its completion, unless excused by the city engineer; the ordinance fixed one hundred and twenty days for the completion of the work without authority in the engineer to extend the time. The work was completed within the time prescribed by the ordinance. *Held,* where the ordinance and a contract are out of harmony, the contract must give way to the ordinance; but where requirements of both contract and ordinance are fully satisfied, no one has any ground of complaint against the contractor, and it must be assumed that the contract stipulations, though void, were without effect on the bidding and offered no discrimination in favor of any bidder.

8. ———: ———: ———: **Superintendence: Taxbills:· Ordinance: Competitive Bidding.** Conceding that a city cannot impose the price of superintendence on abutting property, yet where such sum was not provided for in the ordinance authorizing the work nor included in the estimate of the engineer, and

therefore could not have been taken into consideration at the bidding, its appearance in the contract alone imposes no additional burden on the property and cannot therefore be allowed to affect the validity of the taxbills.

9. ———: ———: ———: **Ordinance: Contract: Performance.** There must be substantial compliance with the ordinance and contract to authorize a levy of a special assessment, and the burdensomeness or impossibity of full performance is no excuse, and, in such case, the ordinance should be repealed and a new proceeding instituted.

10. ———: ———: ———: ———: ———: **Evidence: Burden of Proof.** On the evidence in the peculiar situation in the plaintiff city, under the ordinance and contract, it is held that the improvements were constructed as therein required, and since the taxbill is prima facie evidence of a regularity of the proceeding and the liability of the property to be charged, the burden is upon the defendant to overcome the prima facie effect; otherwise the petition for the improvement and the proceedings will be presumed to be sufficient.

Appeal from Clay Circuit Court.—*Hon. Joshua W. Alexander*, Judge.

REVERSED AND REMANDED (*with directions*).

*H. L. Moore* and *I. J. Ringolsky* for apellants.

(1) There was no authority given cities of the fourth class to curb or gutter its streets by issuing taxbills. Sec. 1592, Laws 1893, pp. 107-108; Knapp v. Kansas City, 48 Mo. App. 485; St. Louis v. Tel. Co., 96 Mo. 623; Hustonia v. Grubbs, 80 Mo. App. 433; Bank v. Sanford, 103 Fed. —; Skinker v. Heman, 148 Mo. 349. (2) The Laws of 1893, p. 107, delegate to the board of aldermen authority by ordinance to fix the time, extent, dimensions, material, manner and regulations connected with public improvements. Hence, none of these legislative powers can be delegated to any other person or officer. If the ordinance fixes the time within which a public improvement shall be finished, then no one has the right to extend that time. In other words, the con-

tract made for the improvements with the contractors, must correspond with the ordinances authorizing the making of the improvements. Our contention is that all the contracts for the paving, guttering and curbing under which the work was done and the taxbills issued are void because the contracts are different in terms and conditions from the ordinances authorizing the work, and are much more favorable to the contractor than the ordinance; and because the contracts give to the city engineer legislative powers, only possessed by the board of aldermen themselves. (3) We think the contracts made with McCormick are void because they are in conflict with the ordinance appointing an engineer, and because the contracts are against public policy. Kick v. Merry, 23 Mo. 72; Gillman & Cowdery v. Railroad, 40 Iowa 200; Outon v. Rhodes, 3 Marsh (Ky.) 433; Taffan v. Brown, 15 Wend. 170. (4) The ordinances and taxbills for macadamizing Broadway, South and Main streets are void, because they provide that these streets shall "be macadamized to the full width thereof, exclusive of sidewalks." (5) As plaintiff seeks to enforce a taxbill for curbing and paving Broadway from "west side of lot 7," and in the various counts in the petition for curbing and paving Broadway alleges that the work was completed from the "west side of lot 7," he having failed to prove that he did the work from the "west side of lot 7," this being a material allegation, there was a total failure of proof of the causes of action charged in said counts in the petition. If the contract was modified so as to allow the work to be done from the "east side of lot 7," plaintiff should have pleaded that fact. There was no consideration for such modification of the contract. Plaintiffs cannot sue on one written contract and recover on another. For these reasons, the decree should have been for defendants on the counts for paving and curbing Broadway. R. S. 1899, secs. 728-729; Faulkner v. Faulkner, 73 Mo. 327; Waldhire v.

Railroad, 71 Mo. 514; Groll v. Tower, 85 Mo. 247; Whipple v. Loan Ass'n, 55 Mo. App. 554; Cole v. Armour, 154 Mo. 333; Mormaw v. Emerson, 80 Mo. App. 318; Lanitz v. King, 93 Mo. 513.

*D. C. Allen* and *Sandusky & Sandusky* for respondent.

(1) Cities of the fourth class may curb or gutter their streets by issuing taxbills. Laws 1893, pp. 107-8, sec. 1592; Elliott on Road and Streets (1 Ed.), p. 335; Dillon on Municipal Corp. (4 Ed.), 3797; Corbin v. Cavender, 56 Mo. 286. (2) The contracts under which the work was done were not void upon the grounds stated in appellants' brief. (3) It is claimed the taxbills are invalid because the width of the sidewalks was not fixed, when the ordinances for the improvement were passed. Under the testimony the width of the sidewalk was fixed before the contracts were entered into. (4) It is claimed that the taxbills for macadamizing and curbing Broadway are void for the reason that the work stopped at the east line of lot 7, in block 19, Western addition, instead of the west line of said lot 7, a difference of forty feet. This presents simply a question of construction. (5) It is claimed that the taxbills for paving and curbing Broadway and South street are invalid because two streets (as alleged) were improved under one ordinance and contract.

JOHNSON, J.—Action to enforce special taxbills issued in payment of certain street improvments in Excelsior Springs. Their validity is attacked by defendant on a number of grounds, but was sustained by the trial court. An appeal was allowed to this court, but, on motion of defendant, the cause was certified to the Supreme Court because in our opinion a constitutional question was involved. The Supreme Court reached a

different conclusion and remanded the cause (Excelsior Springs to use v. Ettenson, 188 Mo. 129), and in the opinion filed eliminated that question from the case.

Thirty-six taxbills were issued against property of defendant in Excelsior Springs, a city of the fourth class; nine for the macadamizing of Main street, nine for the curbing laid thereon, nine for the macadamizing of Broadway and nine for curbing on that street. Each taxbill was made the subject of a count in the petition. In the judgment a separate finding was made on each count and judgments were rendered in the aggregate on all counts affecting the same property. The improvements mentioned consisted of the macadamizing, guttering and curbing of Broadway, South, and Main streets. Broadway runs east and west. South is the eastward prolongation thereof. Main runs north and south crossing Broadway.

On June 28, 1894, the city in providing for the doing of the work contemplated passed four ordinances, i. e.: No. 232 for the macadamizing and guttering of Broadway and South streets; No. 240 for the curbing of the same; No. 236 for macadamizing Main street and No. 244 for the curbing thereon. Each ordinance required the city engineer to make and file in the city clerk's office an estimate of the improvement, stating in those relating to macadamizing the cost per square yard "for macadamizing according to the specifications of this ordinance and" in those relating to curbing "the cost per lineal foot for said curbing according to specifications," etc. The mayor and clerk were required to advertise for bids in the official newspaper for a period of ten days and each ordinance made it mandatory on the mayor and board of aldermen to "let the contract . . . to the lowest and best bidder provided the amount bid does not exceed the estimate price." The estimates were filed; advertisements made; and on July 21st, by resolutions duly passed, the whole work was awarded to F. P.

McCormick, whose bid on the macadam was sixty cents per square yard and on the curbing fifty cents per lineal foot. Written contracts were made with McCormick on July 26th and on the same day these were confirmed by the city in ordinances duly passed. The improvements were completed by the contractor in the time required by the ordinances and contracts (one hundred, twenty days), the cost thereof computed and apportioned, and the taxbills were issued on November 15th and delivered to the contractor who, before the bringing of this suit, assigned them to the plaintiff.

At the time these improvements were made the right of the city to assess the cost of such improvements against the adjoining property was derived from the provisions of section 1592, Revised Statutes 1889, as amended in 1893. [Session Acts 1893, page 107, et seq.] That section provided, "The board of aldermen shall have power by ordinance to cause to be graded, constructed, reconstructed, paved, or otherwise improved and repaired, all streets, sidewalks and alleys, and public highways, and parts thereof within the city at such time and to such extent and of such dimensions and with such materials and in such manner and under such regulation as shall be provided by ordinance," etc. The ordinances passed by the city for the macadamizing specified the time allotted for the completion of the work, the materials to be used, the manner and regulations to be followed, and with reference to the extent and dimensions of the improvements fixed a boundary at each end thereof and stated that each street was to "be macadamized to the full width thereof exclusive of sidewalks." Broadway-South street is sixty feet wide, Main street forty feet. When the ordinances were passed no sidewalk limits had been established by the city on these streets either by general or special ordinance, nor were they fixed until after the contracts had been awarded to McCormick. On July 26th, the date the contracts

were made and confirmed by ordinance, the city passed an ordinance establishing the width of the sidewalks on Broadway-South street, at eight feet and on Main street at six feet. It thus will be seen that bidders were not advised by the ordinances, nor by the plans and specifications, of the extent of the macadamizing required, since a necessary dimension (the width) was not stated and could not have been known. Defendant relies on this omission to defeat the validity of the bills issued for the cost of the macadamizing.

We give ready assent to the argument of plaintiff "that all presumptions are in favor of the right acting of public officers" and that "the taxbills themselves are prima facie evidence of the regularity of the proceedings for such special assessments, of the validity of the bill, of the doing of the work, of the furnishing of the materials charged, and of the liability of the property to the charge stated in the bill." But such presumptions go no further than to cast the burden of proof on defendant to clearly show that the proceedings were not in substantial conformity to the requirements imposed by law and should the proceedings in the record before us disclose a fatal infirmity, the presumptions invoked must give way. This is in line with the expression of the Supreme Court in Paving Co. v. Ullman, 137 Mo. 1. c. 568, copied in the brief of counsel for plaintiff : "It is our duty to assume (in the absence of a showing to the contrary) that the municipal authorities have proceeded in accordance with law and not in violation thereof. Action by city officials in regard to the imposition of special taxes for a street improvement comes within the protection of the general maxim that public officers are presumed to have rightly acted *until the contrary is clearly made to appear.* It is a grave error to suppose that the law looks with any disfavor upon these special taxbills for street improvements. They are to be treated with the same fairness and justice that should be accorded all

public acts of the civil authority *when taken in conformity to law.* And a want of conformity to law is not to be presumed as to such governmental action any more than to other proceedings of public functionaries. [Farrar v. St. Louis, 80 Mo. 393.]" (The italics are ours.)

The facts we have stated are clear and indisputable' for they are matters of public record and now we will consider their effect on the validity of the taxbills. It is true courts should not look with disfavor òn such special assessments, for they result from a method prescribed by the legislative department of government for the making of necessary and indispensable street improvements in municipalities and therefore should be enforced with fairness and justice, but also is it true that, at best, they are harsh and coercive in their effect on the property-owner. They are an exercise of sovereignty, of the taxing power of the State (City of Independence v. Gates, 110 Mo. 374; McCutcheon v. Railroad, 72 Mo. App. 271), and for that reason courts have carefully enforced the provisions found in the laws authorizing their imposition that are designed to protect' the rights of the property-owner to the end that he may not become the unwilling and helpless victim of possible dishonest practices on the part of public officers or contractors; and when it appears that such safeguards have been ignored in the proceedings leading to the assessment, the law pronounces the assessment void regardless of whether or not actual injury has been inflicted in the specific case, for the destroying vice lies in opening a door to fraud or favoritism that the law-making power has said must remain closed.

Plaintiff points out that "the charter of Excelsior Springs (R. S. 1889, page 444; Acts 1893, page 107) did not require public work to be advertised and let to the lowest bidder, nor was there any general ordinance that so required," and adds: "the city could therefore proceed without it." The statute did not require the work to

be contracted nor let to the lowest bidder (Warren v. Paving Co., 115 Mo. 572), but it authorized such procedure as one likely to be adopted by cities of this class, and required the city to specify in the ordinance providing for the improvement in what manner the work should be done. In addition to what we have quoted before, the ordinances provided: "When a majority of the resident real estate owners in front feet on such street  . . . petition the board of aldermen to have such street . . . paved or macadamized, then the same shall be done in the manner . . . designated in *such* ordinance," etc. In this enactment the Legislature chose not to designate an exclusive method for the doing of the work of street improvements in cities of this class, and invested the city with the legislative function of making a selection among different methods; but, obviously, having in view the protection of the property-owner, required the city to express its selection in the ordinance providing for the improvement and strictly to follow the method adopted. These were conditions precedent, the performance of which was made essential to the exercise of the right to levy a special assessment to pay for the cost of the improvement. [Springfield v. Weaver, 137 Mo. l. c. 666; City v. Eddy, 123 Mo. 546.] Being charged with the duty of providing a method for doing the work, it is immaterial that the city was not bound in the first instance to advertise for bids and to let the contract to the lowest and best bidder. That was a method it could select and in proceeding with the improvements under the ordinances adopting it, the city was bound to follow it in the manner and to the extent that would have been required had the statute in express terms made that method exclusive.

Thus, it will be seen that the duty of the city to advertise for bids and to let the contracts to the lowest and best bidder, was imperative. The performance of that duty was regulated by the terms of the statute re-

quiring the ordinance to state all of the facts concerning the improvements necessary to enable contractors to prepare their bids intelligently.   The prime object of these provisions had in view the information and guidance of property-owners and contractors to the end that the former might know not only the extent and character of the work, and the time in which it was to be performed, but also have the assurance that, if advertised, and let to the lowest and best bidder, a full and fair opportunity would be afforded for competitive bidding. [McQuiddy v. Brannock, 70 Mo. App. 535; Galbraith v. Newton, 30 Mo. App. 392.]   One of these essential conditions the city failed to perform.   It advertised and let the contract without in any manner designating one of the dimensions and consequently bidders were left entirely in the dark as to the extent of the macadamizing that would be required.   That depended on the future action of the law-making body of the city and was permitted to remain undetermined until after the time allotted for the reception of bids had expired.   We cannot disregard this mandatory provision of the statute by saying that no contractor could have been prevented by this omission from estimating the cost per square yard of laying the macadam. He could not have known whether the macadamizing on Broadway would be thirty or fifty feet in width.   Knowing that the improvement must be completed in one hundred and twenty days, he well might have concluded that, should the city establish the width of the roadway at fifty feet, he could not purchase and assemble the materials or obtain the necessary labor to complete the work in the time required, or, if he could, it would be at an expense that would enhance materially the cost of the work.   This uncertainty regarding the extent of the work, for aught that may be known, may have prevented some from bidding at all and may have increased the amount of the bids submitted by others.   Moreover, the omission opened the

120 App.—15

way to favoritism. Action establishing the sidewalk limits could have been delayed purposely and the favored bidder secretly informed of the limits that would be fixed. There is no suggestion of such unfair practice in this case, but, as we said, the vice lies in giving the opportunity for it in the face of statutory provisions expréssly designed to prevent such possible occurrences. [Ramsey v. Field, 115 Mo. App. 620.] It follows from what we have said that the failure of the city to specify the extent and dimensions of the improvements was the failure to perform a condition made by the statute prerequisite to the exercise of the right to levy an assessment, and the macadamizing bills therefore are void. [Construction Co. v. Loevy, 64 Mo. App. l. c. 434.]

The validity of the taxbills issued to pay for the curbing is attacked on many grounds. First, it is said by plaintiff that these bills should be held invalid because "there is no provision in these ordinances fixing the grade or level at which these improvements shall be made," and that "as the ordinances are thus silent, the provisions of the contracts, respectively, essentially leave and delegate to the city engineer the whole matter of the grade . . . of these improvements." Turning to the ordinances, we find in each the provision that the street "be curbed according to the established grade." Evidently, this refers to a grade previously adopted by ordinance and in requiring conformity with it in the proposed improvement no legislative function was permitted to be exercised by the engineer. Property-owners and contractors could obtain definite information respecting the grade by an examination of the previous municipal legislation on that subject. No necessary purpose was to be served by setting out the details of the established grade in the ordinances providing for the improvements. The provision under consideration was sufficient. [Claflin v. Chicago, 178 Ill. 549.]

The next point made is, that under section 1592,

Laws of 1893 (page 107 et seq.), no authority was given cities of the fourth class to issue special taxbills to pay for the cost of curbing. Power was given the board of aldermen by ordinance "to cause to be graded, constructed, reconstructed, paved, or otherwise improved and repaired all streets," etc., and it was provided that "when a majority of the resident real estate owners in front feet on such street . . . petition to have such street . . . graded, constructed, reconstructed, paved or macadamized, then the same shall be done . . . at the owner's or occupier's expense and collected by special taxbills." Curbing is not specially mentioned, but clearly was intended to be included in the improvements designated. The terms "constructed" and "paved" as here employed were comprehensive enough to refer to the entire pavement of the street. Curbing is a necessary part of paving to separate the sidewalk from the roadway for vehicles and it would require a strained construction of the enactment to say that the Legislature intended to authorize special assessments to be levied to pay for the cost of sidewalks and of paving the way for vehicles and not for the cost of the usual and necessary wall separating them. [Morse v. City of Westport, 110 Mo. 502; Powell v. St. Joseph, 31 Mo. 347; Carlin v. Cavender, 56 Mo. 286; Warren v. Henly, 31 Iowa 31; Wistar v. Philadelphia, 80 Pa. St. 505; In Matter of Petition of Burmeister, 76 N. Y. 174; In re Phillips, 60 N. Y. 16; Steckert v. East Saginaw, 22 Mich. 104; Dillon on Municipal Corp. (5 Ed.), sec. 3797; 6 Words and Phrases Judicially Defined, 5239, et seq.] Moreover, in the enactment we find direct expressions of the legislative intent: "Taxbills issued as herein provided for special assessments for paving, macadamizing, *curbing,* guttering, grading," etc., were made assignable and "the owner of any lot or parcel of ground fronting on such street, avenue, square, gutter, *curb,* alley, sidewalk or part thereof to be improved" was given the right, on

notice, to pay his assessment in installments.  We grant that a municipal corporation has no authority to create a tax lien by ordinance, or otherwise, where none has been expressly conferred upon it by statute (Inhabitants of Houstonia v. Grubbs, 80 Mo. App. 433), but are holding that a proper interpretation of the statute under examination necessitates the conclusion that express authority was conferred therein on cities of the fourth class to issue special taxbills to pay for curbing.

Another point urged against the validity of the taxbills is grounded on this clause in the contracts:  "It is further agreed that the sum of ten dollars per day shall be deducted from the amount of the final estimate of said work as liquidated damages for each and every day said work shall remain unfinished and unaccepted by the city engineer of said city after the time herein specified, within which said work shall be  completed, unless such delay is excused by the city engineer."  The ordinances required the work to be completed in the time stated (one hundred, twenty days), without condition or qualification, and granted no authority to the city engineer to extend the time for any cause; but it is argued the bills must be held void because of the variance in these respects between the contracts and  the ordinances.  The case of McQuiddy v. Brannock, 70 Mo. App. 535, is relied upon to sustain this contention.  In that case the improvement was not completed in the time fixed in the ordinance, and we held the taxbills void despite the fact that the contracts authorized the city engineer to extend the time and the improvements were completed in the time so extended.  But here the improvements were completed in time fixed in the ordinances and certainly it would be extremely harsh and unreasonable to pronounce the bills void—when the contractor had complied with the strict letter of the ordinances—because the city had attempted in the contracts to enlarge the provisions of the ordinances, a thing it

clearly was without power to do. In the particulars that the contracts are out of harmony with the ordinances, the contracts must yield (Neill v. Gates, 152 Mo. 585); and, "when the requirements of both ordinances and contracts are fully satisfied, surely neither the city, the property-owner, nor anybody else has any ground of complaint against the contractor." [Heman v. Gilliam, 171 Mo. 258.] As the unauthorized stipulations in the contracts were clearly void, we must assume they were without effect on the bidding and offered no opportunity for discrimination in favor of any bidder.

Further objection is made on account of the inclusion in the contracts of an agreement on the part of the contractor to pay "the engineering expenses for laying out and superintending and issuing taxbills for the same." The engineering work and superintendence were performed by the city engineer, who received a regular salary from the city for his services, and it has been said that, "Services rendered by officers of a municipal corporation, who are paid a regular salary, should not be considered as forming any part of the cost of the improvement. It is the duty of municipal corporations to provide the appropriate machinery for making public improvements and the individual citizen charged with special benefits ought not to be compelled to bear any part of that machinery beyond that which he pays as one of the taxpayers of the municipality." [Elliott on Roads and Streets (2 Ed.), sec. 573.] Authorities holding contrary to this doctrine may be found. [Beniteau v. Detroit, 41 Mich. 116; In the matter of Lowden, 89 N. Y. 548.] We may concede for argument, without so deciding, that the city had no right to impose on the property, against which the assessment was levied, the salary of its engineer or any part thereof as an item of the cost of the improvement, but this concession, when made, avails defendant nothing, since it appears clearly that this item was not included in such cost and therefore the

property-owners were not burdened with an expense that should have been paid out of the general revenue. The ordinances providing for the improvements did not require the payment of such expenses by the contractor, nor were they included in the estimates filed by the engineer, and therefore could not have been taken into consideration in the bidding. Appearing for the first time in the contracts, they imposed no additional burden on the property-owners, and for that reason, if for no other, cannot be allowed to affect the validity of the taxbills.

An objection peculiar to the taxbills issued for the improvements on Broadway-South street, is made on the following ground. Both ordinance and contract provided for the curbing "of Broadway street from the west line of the lot seven in block nineteen in the Western addition east to" a point named and the taxbills recited that the work had been completed from the west line of said lot seven. This lot fronts forty feet on Broadway and is on the north side of the street. It is conceded that the improvements constructed began at the east line of said lot and the point is made that these taxbills must be held void because the work was not completed in substantial compliance with the requirements of the ordinance and contract. The principle of law invoked in this contention is too well settled to be called in question. There must be a substantial compliance with the ordinance and contract in such case, else no authority exists to levy a special assessment. [King Hill Brick Co. v. Hamilton, 51 Mo. App. 120; City of Trenton v. Collier, 68 Mo. App. 483.] And, further, the fact that full performance would be unduly burdensome, or even impossible, furnishes no excuse in law for a failure to perform all of the conditions. If the improvement cannot be constructed as provided for in the ordinance, it is the duty of the city to repeal the ordinance and begin anew. It cannot proceed under the ordinance and materially change the improvement and compel property-own-

ers to pay therefor.  [Boonville v.  Stephens, — Mo. App. —; Eustace v. The People, 213 Ill. 424.]

But under the novel situation disclosed in the record before us, we are satisfied there was no substantial difference between the improvements as authorized and as constructed.  The western terminus of Broadway was the east bank of Fishing river.  The street as dedicated and platted did not cross that stream, nor extend into it.  The southwest corner of lot seven extended to the river bank.  From this point the course of the bank was towards the southeast, so that a prolongation southward of the east line of lot seven would have intersected the south line of the street at the point where it met the river bank and consequently a prolongation of the west line of the lot would have met an extension of the south line of the street forty feet west of the east bank of the river and therefore forty feet west of the terminus of the street.  No provision was made for extending the street westward; such extension would have been neither practicable nor useful and it is altogether unreasonable to infer that anyone interested in the work, city officials, contractors, or property-owners, contemplated that an embankment thirty feet high was to be constructed into midstream for the sole purpose of providing an end to a street that had no existence at that place.  Clearly a mistake was made in naming the west for the east line of the lot and it would be carrying the doctrine of strict construction to a ridiculous length to say that this obvious mistake should serve to defeat the taxbills.  [Bank v. Haywood, 62 Mo. App. 550.]  It is more consistent with reason and fairness to construe the ordinances and contract to give effect to the evident purpose of the city to macadamize and curb the street that existed to its western terminus, the east bank of the river, and not to hold that the city attempted to exercise jurisdiction over territory that had

not been dedicated as a public street and over which it had no jurisdiction.

Our construction of the ordinance and contract requires the holding that the improvements were constructed as therein required. But it is argued by defendant that for aught disclosed the owner of lot seven may have signed the petitions for the improvements and the forty feet frontage of that lot may have been necessary to make up the required frontage. The petition was not introduced in evidence and the question here is concerned with the burden of proof. The charter provided, "Such special taxbills shall in any action thereon be prima facie evidence of the regularity of the proceedings for such special assessments, of the validity of the bill, of the doing of the work, and of the furnishing of the materials charged for, and of liability of the property to the charge stated in the bill." With the taxbills in evidence, the burden was on defendant to overcome the prima facie effect given them by the statute. As we have shown, the validity of the bills for curbing and the regularity of the proceedings leading to their issue, in no manner have been inpeached by the ordinances, contracts and other evidence offered. Consequently, the burden still remained with defendant to show, if he could, that the petition signed by the property-owners was insufficient. This he has not done and therefore we assume that it conformed with the requirements of the statute.

Other questions raised against the validity of the curbing bills have been considered and are decided adversely to the contention of defendant.

The views expressed necessitate the conclusion that all of the taxbills issued for curbing are valid, and that all issued for macadamizing are void. The judgment is reversed and the cause remanded with directions to enter judgment accordingly. All concur.