HARRY L. DEMING et al., Plaintiffs in Error, v. METROPOLITAN ENGINEERING & CONSTRUCTION COMPANY, Defendant in Error.

Kansas City Court of Appeals, April 3, 1911.

1. **MUNICIPAL CORPORATIONS: Cities of Third Class: Street Repairs: Taxbills.** In an action in equity for the cancellation of certain special taxbills issued by a city of the third class for repairing its asphaltum street pavement, *held*, that a petition stated a good cause of action when drafted on the theory that taxbills issued, in cities of the third class, to special contractors, are void because the statutes relating to cities of that class require that street repairs be made by the city itself.

2. ——: ——: ——: Amendment of 1901. By the amendment of 1901, the act of omitting from the fifth subdivision of section 5858, R. S. 1899 (sec. 9254, R. S. 1909), the provision for letting street repair work to contractors, and of substituting therefor a new provision of section 5859, R. S. 1899 (sec. 9255, R. S. 1909), to the effect that the proper city officer *may* cause such work to be done, was tantamount to an express disapproval of the old method, and to that extent, at least, the new method was intended to be exclusive.

Error to Benton Circuit Court.—*Hon. C. A. Denton,* Judge.

REVERSED AND REMANDED.

*Barnett & Barnett* for plaintiffs in error.

*Scarritt, Scarritt & Jones* and *Alfred M. Seddon* for defendant in error.

JOHNSON, J.—This is an action in equity for the cancellation of certain special taxbills issued by Sedalia, a city of the third class, in payment of the cost of repairing the asphaltum pavement upon one of the public streets of that city. Plaintiffs are the owners of real estate abutting on the street. The defendant is the assignee of the taxbills issued against the property of plaintiffs to the contractor who made the repairs under contract with the city. The allegations of the petition show that the contract was let pursuant to proceedings conforming to the provisions of the statutes relating to the paving or grading of public streets in cities of the third class. The theory of the petition is that such method is unauthorized by law and that the taxbills are void for the reason that the statutes relating to cities of that class require that street repairs be made by the city itself and not by a contractor under contract with the city. Defendant demurred on the ground that the petition fails to state a cause of action. The demurrer was heard and sustained, plaintiffs refuse to plead further and judgment was rendered

for defendant on the pleadings. In due course of procedure, the cause was lodged in this court by writ of error sued out by plaintiffs.

The proposition we are called on to decide thus is stated in the brief of defendant: "Can cities of the third class in Missouri let a contract to the lowest and best bidder to make repairs on a street pavement which, at places, is worn out and defective, and issue taxbills to pay therefor?" The solution of this question calls for the interpretation of parts of sections 5858 and 5859, Revised Statutes 1899, as virtually amended by the Legislature in 1901. (Laws of 1901, p. 63, *et seq.*) Both before and after the amendment, the statutes authorized the issuance of special taxbills to pay the cost of street repairs, but the amendment made an important change in the provisions relating to the method to be pursued in making such repairs. The fifth subdivision of section 5858, Revised Statutes 1899, provided: "The cost of paving, macadamizing, guttering and curbing (where such curb is set out into the street beyond the sidewalk), all streets, avenues, alleys and other highways, or any connection therewith, and for doing all excavating and grading necessary for the same, may, at the option of the city council, be paid for in the manner prescribed in sections 5858, 5859 and 5860, of this article, or out of the general revenue fund of the city: *Provided,* there be sufficient funds on hand in said general revenue fund to pay for such work and for the current expenses, obligations and liabilities of the city without the city incurring debts therefor. *Ordinary repairs of streets may be made in the same manner prescribed in this subdivision of this section, but repairs on unimproved streets shall not exceed fifty dollars per year for each city block.*"

The sentence we have italicized was omitted from the statutes by the amendment of 1901 and in lieu thereof, the following new provision was added to section 5859: "No formality shall be required to author-

ize the repairing of streets or other paving, macadam-
izing, curbing, guttering or parts thereof and make as-
sessments therefor; but the proper officer or officers or
committee on improvements may, with or without no-
tice, as authorized by ordinance or resolution, cause
such work to be done, keeping account of the cost there-
of and reporting the same to the council for assess-
ment."

In the interpretation of legislative enactments the
principal rule for judicial guidance is that the true
intent of the Legislature as disclosed by the enactment
should be ascertained and given effect. Both parties
concede this to be sound doctrine and each strives to
turn it to his own advantage. Counsel for defendant
say that the power given cities of the third class to re-
pair the public streets carries the implied power to con-
tract for such repairs and that the amendment of 1901
was not intended to deprive the municipalities of the
power to let contracts for street repairs to the lowest
and best bidder but was merely cumulative and permis-
sive. The argument is based largely on the use of the
auxiliary verb "may" in the amendment instead of the
more mandatory "shall." On the other hand, counsel for
plaintiffs contend that where the statute in question re-
lates to a power or function to be exercised by public
officers, the use of the auxiliary "may" in defining or
describing the authorized act conveys the same meaning
as would be given the auxiliary "shall" had it been used.
And our attention is directed to the amendment we have
noted as direct evidence of an intention on the part
of the Legislature of substituting a new method of mak-
ing street repairs for the old method of letting such
work to contractors. "Whether the word 'may' in the
statute is to be construed as mandatory and imposing a
duty or merely as permissive and conferring discretion,
is to be determined in each case from the apparent in-
tention of the statute as gathered from the context
as well as the language of the particular provision."

[5 Words and Phrases, p. 4421, and cases cited.] Ordinarily the word is employed to express the idea that a discretion may be exercised, that the performance of the act to which it refers is not imperative or that the power or authority conferred is not exclusive but cumulative and permissive, "but the word 'may' in a statute will be construed to mean 'shall' whenever the rights of the public or third persons depend on the exercise of the power or the performance of the duty to which it refers, and such is its meaning in all cases where the public interests and rights are concerned, or a duty is imposed on public officers and the public or third persons have a claim *de jure* that the power shall be exercised." [5 Words and Phrases, p. 4421.]

It must be presumed that the rules to which we have referred were in the legislative mind at the time the amendment was enacted and that the well settled rule that statutes providing for the exercise of sovereign power over the citizen are always to be strictly construed (City of Kirksville v. Coleman, 103 Mo. App. 265; Excelsior Springs v. Ettenson, 120 Mo. App. 215) was not overlooked or ignored. What intent was expressed by the Legislature in dropping from the statutes the provision for letting repair work to contractors and adding the provision for such work being done by the city? The Legislature must have known that in construing the amendment the courts would investigate the history of the law and would attach significance to an alteration so important (Grimes v. Reynolds 94 Mo. App. 576; Duff v. Karr, 91 Mo. App. 16; Sales v. Barber Asphalt Co., 166 Mo. 671), and, further, must have known that the doctrine of implied power does not obtain in cases where the method is prescribed for the exercise of powers expressly granted.

In the light of these considerations, the act of omitting from the statute the provision for letting street repair work to contractors and of substituting therefor the provision under consideration was tantamount to an

Deming v. Engineering & Construction Co.

express disapproval of the old method and, to that extent, at least, the new method was intended to be exclusive. A careful examination of the statutes and a thorough consideration of all the points advanced by defendant convince us that the interpretation we have given the amendment is that compelled by the rules to which we have referred and that it does no violence to the familiar rule that "all the words of a law must have effect rather than that part should perish by construction."

We do not sanction the argument of defendant that the statutes as construed by us restrict cities of the third class to an unreasonably expensive and impractical method for making street repairs. Contractors may be better equipped for such work than municipalities but, doubtless the reason prompting the change in the law was the conviction that under the contract method too much unnecessary repairing was done and property owners burdened with the cost thereof. The Legislature possessed the power of prescribing a reasonable method or methods and we perceive no ground for condemning the enactment as unreasonable.

The demurrer to the petition should have been overruled since it follows from what we have said that the petition states a cause of action for the cancellation of the taxbills. The judgment is reversed and the cause remanded. All concur.