MURTY FARRAHER v. THE CITY OF KEOKUK, Appellant.

**Public Improvements:** RECONSTRUCTION AND REPAIR: *Assessment for permanent sidewalk.* Code, section 779, confers on cities power to provide for the construction, reconstruction, and repair of permanent sidewalks, and to assess the cost thereof on abutting lots, and that such improvements shall be made only on petition of the owners of the majority of the frontage. Section 780 provides that cities shall have power to repair sidewalks without notice to owners and assess the expense thereof against the property. The city engineer caused a brick walk, which had been out of repair, to be taken up, a new trench dug, and an entirely new foundation of sand laid therein, and a large number of new brick to be used in relaying the walk. *Held,* to constitute a re-construction, and not a repair of the walk, which the city was authorized to make without a petition of the majority of the frontage, and that, hence, assessment therefor was void.

*Appeal from Keokuk Superior Court.*—HON. RICE H. BELL, Judge.

THURSDAY, MAY 10, 1900.

PLAINTIFF, the owner of a certain lot in the defendant city, brings this action to enjoin the sale of said lot for non-payment of a special tax levied against it by the defendant, on the ground that said tax is illegal and void. Defendant answered, in effect denying that the tax is illegal or void, and on hearing had a permanent injunction was granted as prayed. Defendant appeals.—*Affirmed.*

*Hazen I. Sawyer* for appellant.

*Ballinger & Wilson* for appellee.

GIVEN, J.—I. The city of Keokuk existed under special charter, but the sections of the Code to which we will refer are made applicable thereto by section 958. Section 779 confers "power to provide for the construction, reconstruction and repair of permanent sidewalks and to assess the cost thereof on the lots or parcels of land in front of which the same shall be constructed." It is further provided in said section: "But unless the owners of a majority of the linear feet of the property fronting on the improvements referred to in this section petition the council therefor, the same shall not be made unless three-fourths of all the members of the council shall by vote order the making thereof." Section 780 is as follows: "Cities and towns shall have power to repair sidewalks without notice to the property owners, and assess the expense thereof on the property in front of which such repairs are made, and the same shall be certified and collected as other taxes." Section 441: The Revised Ordinances of the city provides as follows: "There is hereby created and established the office of sidewalk commissioner. The duties of said office

shall be performed by the city engineer." Section 442: "It shall be the duty of the city engineer, acting as said commissioner, to perform all the duties devolved upon him by the chapters relating to sidewalks and have all labor upon the sidewalks ordered by the city council performed in accordance with the chapter relating thereto; make all ordinary repairs on sidewalks as the city ordinances provide, and see that the same are kept in good safe condition for the public travel, subject to instructions and directions of the sidewalk committee; to oversee the construction and maintenance of all sidewalks now in, or that may be ordered by the city council. And whenever it is necessary to rebuild or construct any sidewalk he shall report the same to the sidewalk committee, who shall, if in their judgment such improvement is necessary, prepare and offer a resolution to the city council ordering such improvement as provided for by ordinance. He shall report all violations of ordinances relating to sidewalks to the sidewalk committee, and be authorized and empowered under the instructions of the sidewalk committee to employ competent men and procure necessary material to make any repairs or construct any walk that may have been ordered as herein provided." On December 11, 1896, and again on April 14, 1897, the city engineer caused notice to be served on the plaintiff as follows: "You are hereby ordered to repair brick walk in front of the above-described property on Fifth street by general repairs and placing in good condition, and drain water from ice-house so it will not injure the sidewalk. Said repairs to be made within ten days after service hereof. By order of sidewalk committee. G. M. Walker, City Engineer." The plaintiff disregarded the notice, and thereupon the city engineer caused the walk to be put in order by Mr. Van Ausdall, who reported the cost to be forty-eight dollars and forty-four cents, and the lot was assessed that amount. It will be observed that the city engineer had authority "to repair sidewalks without notice to the property

owner, and assess the expense thereof," but in case of con-
struction or reconstruction a petition from the owners or a
vote of the council is required. There was no such petition
or vote, and the question discussed is whether this sidewalk
was repaired or reconstructed.

II. As to the condition of the walk the city engineer
testifies: "I examined sidewalk, and found same in great
need of repair, from near the curb line of Des Moines street,
one hundred and thirty-four feet towards the alley, between
Des Moines street and Timea street. Bricks were in numer-
ous places broken and crushed. The walk was low, and cov-
ered with mud and clay. Holes which held water existed
all over said walk. Part of said walk had been used for the
purpose of driving heavy ice-wagons over, and the walk was
crushed, broken, and in dangerous condition." Mr. Van
Ausdall testifies to the same effect. He also testifies: "We
took up the entire sidewalk for 134 feet, and redug the
trench again, and put back what old sand was left, which
was very little, and put in 11 cubic yards of new sand;
that is, there wasn't any sand there went back in there.
There was nothing in it but mud. No sand went back only
what we put in. There was none of the old sand went back.
We took out all the old bricks, threw out the old sand, redug
the trench, and put new sand back in there, under the bricks.
Then we relaid the walk entirely for a distance of 134 feet,
and in that we used about 2,700 new brick." Again he says:
"We probably used some of the old bricks in the end in
every other row. Taking the walk as a whole, there wasn't
many of the old bricks used." "Repair. To mend, add to,
or make over." "Reconstruct. To construct again; rebuild."
Standard Dictionary. "Repair. Restoration to a sound or
good state after decay, waste, injury, or partial destruc-
tion; supply of loss." "Reconstruct. To construct again;
to rebuild." Webster Dictionary. The old sidewalk was
not mended, made over, nor restored, but was rebuilt, re-
constructed; which seems to have been the only proper rem-

edy. There are no special equities in the plaintiff's claim, and yet the law is unquestioned that in exercising the taxing power the city must pursue the manner pointed out in the statute. *Chicago, R. I. & P. R. R. Co. v. City of Davenport,* 51 Iowa, 451; *Tallman v. Treasurer of Butler County,* 12 Iowa, 531; *McManus v. Hornady,* 99 Iowa, 507. There are manifest reasons why the cost of mere repairs is allowed to be assessed in a more summary manner than the greater cost of reconstructing sidewalks. The decree of the superior court is in accordance with the law, and it is AFFIRMED.