MARSHALL FIELD *et al.*

*v.*

THE CITY OF CHICAGO.

*Opinion filed April 16, 1902—Rehearing denied October 20, 1902.*

1. SPECIAL ASSESSMENTS—*six days' notice of public hearing is sufficient.* Section 7 of the Improvement act of 1897, providing that the improvement board shall fix a day for public consideration of the proposed improvement which shall not be less than ten days after the adoption of the resolution, does not require that ten days' notice shall be given, but only a reasonable notice; and six days' notice is not unreasonable.

2. SAME—*when provision of section 7 of act of 1897 is complied with.* The provision of section 7 of the act of 1897, requiring notices of public hearing to be mailed "to the person who paid the general taxes for the last preceding year on each parcel fronting on the improvement proposed," is complied with where the notices were mailed in May, 1900, to persons who paid the general taxes in 1899, which were levied for the year 1898.

3. SAME—*variance must be willful and substantial to constitute a valid objection.* Under section 9 of the Improvement act of 1897 (Laws of 1897, p. 105,) an alleged variance between the recommendation of the board and the ordinance, on the one hand, and the amended resolution for the improvement on the other, which inflicts no injury upon the property owner, must appear to be willful or substantial in order that it may be a valid objection to confirmation.

4. SAME—*when assessment roll is not defective.* An assessment roll for grading and macadamizing a street is not defective because it fails to describe the improvement district by boundaries, as required by section 39 of the act of 1897, (Laws of 1897, p. 115,) where, after the commissioner was appointed but before the roll was filed, the legislature amended said section 39 (Laws of 1901, p. 106,) by limiting the necessity for describing the district to sewer improvements. (*Yaggy* v. *City of Chicago,* 194 Ill. 88, distinguished.)

5. SAME—*when ordinance provides for a local improvement, and not mere repairs.* An ordinance providing that a macadamized road-bed

shall be scraped, cleaned, filled and rolled so as to present an even surface, and that a new coating of macadam six and one-half inches thick shall be placed thereon, provides for a local improvement and not merely for repair of the street, since it is not necessary to constitute a local improvement that the old material be entirely removed and replaced by material of a different character.

APPEAL from the County Court of Cook county; the Hon. R. H. LOVETT, Judge, presiding.

MASON & NOYES, and MATZ, FISHER & BOYDEN, for appellants.

EDGAR BRONSON TOLMAN, and ROBERT REDFIELD, (CHARLES M. WALKER, of counsel,) for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an appeal from an order of the county court of Cook county confirming a special assessment against the appellants' property to improve Woodlawn avenue by grading and macadamizing the street and putting in curbing and granite concrete gutter-flags. On April 25, 1900, the board of local improvements originated a scheme for a public improvement and passed a resolution describing the improvement, and fixing on Friday, May 11, 1900, at three o'clock P. M., as the time for the public consideration of the matter. Notices for the public hearing were posted up and mailed on May 5,—six days before the hearing. The board met on May 11 at the time and place fixed and postponed the public hearing until June 6, when it again met and adhered to its former resolution, except that a concrete combined curb and gutter was substituted for sandstone curbing.

At the confirmation it was objected by appellants that ten days' notice should have been given of the public hearing, and that a notice of six days was not a compliance with the statute, and *Perry* v. *People*, 155 Ill. 307, is cited as sustaining the objection. This question was considered in *Gage* v. *City of Chicago*, 196 Ill. 512, and it was there held that the statute did not contemplate a

198—15

ten days' notice, but a reasonable notice. The notice in this case was reasonable and sufficient.

The next objection is, that the notices were not, as required by the statute, (Hurd's Stat. 1899, chap. 24, sec. 7, p. 363,) mailed "to the person who paid the general taxes for the last preceding year on each parcel fronting on the improvement proposed," which, it is said, was in this case the person who paid the taxes for 1899, and not the person who paid them for 1898. The notices in this case were mailed May 6, 1900, and to the person who paid the general taxes in 1899 for the year 1898. The provision of the statute under consideration requires notices to be sent by mail, "directed to the person who paid the general taxes for the last preceding year." The taxes for 1898 became a lien on the property to be assessed from April 1, 1898, but the earliest date fixed for the delivery of the tax books and warrant of collection to the various township collectors was December 21, 1898, and up to May 1, 1899, there was no penalty attached to non-payment of the taxes before that time. At the June term of the county court the collector is directed to apply to that court for an order of sale of lands for delinquent taxes, and the owner is permitted to pay his delinquent taxes up to the day of the sale under the judgment of the county court, which, as a matter of common knowledge, is often as late as July or August. While these are the taxes levied for the year 1898, a large part of them was not, in fact, paid till the summer of 1899, and the statute itself contemplates the payment of these taxes during a period continuing several months after the lien for the taxes of 1899 had attached but before such taxes of 1899 could be collected or paid. The legislature must be deemed to have been familiar with the usual course pursued in these tax matters. On May 6, 1900, when these notices were mailed, the taxes for 1899 were still in process of collection. Such taxes were the taxes for the then still current tax year, overlapping the new tax year, which had

its inception April 1, 1900, but which could hardly be considered as the current tax year for the purpose of paying taxes until the tax books were in the hands of the collector, and therefore the "last preceding year" was, when these notices were given, the tax year 1898, within the meaning of the statute.

This view is strengthened by a consideration of other sections in the same act. In providing for condemnation proceedings in connection with a public improvement, in section 19 the superintendent of special assessments is directed to file an affidavit that he has carefully examined the records in the recorder's office for the names of the owners of record of the several parcels of land affected by the improvement, and that he has diligently inquired as to the residence of these owners, and that he has correctly stated such names and residences in the report of the commissioners; and he is further required to swear "that in all cases where he has been unable to find the residence of the owner of such record title, he has examined the *return* of the collector's warrant for taxes on real estate for the preceding year, and has set opposite each such parcel, [the residence of] whose owner has not been found, the name of the person who paid the tax on said parcel for the preceding year, together with his place of residence." Section 21 provides that notices "shall be sent to the persons last paying taxes upon such premises." These sections contemplate using "the return of the collector's warrant for taxes on real estate for the preceding year." As long as the taxes are still in process of collection there can be no return of the collector's warrant, and the search must necessarily be made in the tax books for the last preceding year, the collection of the taxes of which has been finished and the tax books closed and returned. This notice is a notice of proceedings in court, and we see no reason to conclude that the legislature intended to require a stricter rule as to notice of preliminary proceedings before the board of public im-

provements than in the proceedings required in court. The statute may not be as clear as it might have been made, but it should receive a reasonable construction and one that will render it operative, and such we have endeavored to give it.

It is also contended that there is a variance between the recommendations of the board and the ordinance on the one hand, and the amended resolution adopted by the board at the adjourned meeting, June 6, 1900, on the other hand, in this: that said amended resolution substituted a combined concrete curb and gutter for sandstone curbing. The ordinance provides for sandstone curbing on one block only, between Forty-seventh and Forty-eighth streets, and the rest of the way provides for the combined curb and gutter. One block was already curbed with sandstone curbing, and provision was made only for re-setting it. It does not appear that the property owner was injured, and it not appearing that the variance was "willful or substantial," we are of the opinion no error was committed in overruling this objection. The ninth section of the statute provides that "the recommendation by said board shall be *prima facie* evidence that all the preliminary requirements of the law have been complied with, and if a variance be shown on the proceedings in the court, it shall not affect the validity of the proceeding, unless the court shall deem the same willful or substantial."

It is alleged that the assessment roll was defective because no improvement district was specified in it, as required by section 39, at the time the order appointing the commissioner was entered. After such commissioner had been appointed the legislature amended section 39 by limiting the necessity for improvement districts to sewer assessments. Section 99, amended at the same time, provides: "Where proceedings for local improvements to be made by special tax or special assessment shall have been instituted when this act shall take effect,

and where the assessment provided therein has not been confirmed by any court, all future proceedings thereunder shall be as herein provided, with the same effect as if such proceedings had been commenced in accordance with the provisions herein provided." In the case at bar proceedings had been instituted in court by filing the petition and appointing the commissioner, but nothing further had been done when the amendment took effect. The duties of the commissioner were regulated by the statute, and not by the order of the court, and when the legislature changed the statute his duties were thereby changed. This case is distinguishable from *Yaggy* v. *City of Chicago*, 194 Ill. 88. In that case the court had entered an order designating the newspaper in which the notice of the proceedings should be published, and thereafter the legislature changed the law, omitting the provision that the newspaper in which the notice was to be published should be designated by order of the court. Section 99, as applicable to the facts herein, was substantially as it is now. The notice was not published in the paper designated. It was properly held that the order was not set aside by the amendatory act, and not being set aside or vacated by the court it continued to be a legal and valid order, binding upon the petitioner who procured it. In that case the law had imposed the duty upon the court of determining the proper newspaper in which to publish the notice required by law, and the court had acted, and without procuring a vacation or modification of the order the petitioner had disregarded the order. In this case the law had not imposed the duty upon the court of determining whether an improvement district should be fixed or not, but that subject was regulated by statute, irrespective of any order of court. Before the commissioner made his report the statute relieved him of this duty. The assessment roll was not defective.

The next objection is, that the ordinance provides for the repairing of an improvement previously made, and

not for the destruction and removal of the old pavement and its replacement by one of a different character, and that it provides for nothing more than a re-surfacing of the street, and is an attempt to repair the existing roadway by using the material now in place as a foundation for a new surface. It is contended that the ordinance, in order to make the work a local improvement, must have provided for the removal of the whole of the existing pavement and for the substitution of new materials of a like or different character. The surface of the roadway of Woodlawn avenue was composed of macadam, and the improvement ordinance provides that the entire surface of the roadway "shall be thoroughly cleaned by scraping and washing, and all dirt and loose particles removed therefrom, and then rolled with a spiked roller of ten tons weight, and so graded that after the surface of said roadway has been brought to an even surface by filling the holes and depressions therein, using therefor the present macadam material now on said roadway, said macadam material being so used that when said grading is complete said macadam material shall be at the surface of said grading and shall be spread evenly over the entire surface of said roadway and thoroughly compacted;" that upon the road-bed thus prepared shall be spread a layer of broken limestone to a depth of three inches, and upon this layer a layer of limestone screenings to fill all the interstices in the layer of broken limestone; that said layer so prepared shall then be covered with a topping of crushed granite to a depth of three inches, and upon the top of this layer a layer of fine bank gravel is to be placed to fill all the interstices in the granite layer, and then on top of that a layer of the best quality of granite screenings to the depth of one-half inch is to be put.

It will be seen that the ordinance contemplates the cleaning, filling of holes and compacting of the old road-bed, and then the placing of six and one-half inches of

new material on top of it. Is this a local improvement or merely repairing the street? Every street pavement, in order to be of a lasting character, must have a good, solid, prepared or natural foundation to rest on. If the roadway already contains a good foundation or one that with some labor can be made a good foundation, we see no reason why the same should be excavated and destroyed, instead of being used, in putting down a new pavement on the street. Doubtless most of the streets in cities of any considerable size, which have been permanently improved by special assessment or special taxation, had been previously graded, curbed and macadamized by the city authorities, and used in that way by the public long before the permanent improvement was made, and we do not understand that the previous work done on such streets would impress all future improvements with the character of mere repairs unless such previous improvements were destroyed. No evidence was offered in this case bearing upon the character of the work, as to whether it was in the nature of repairs or a new improvement, and we are left to the ordinance alone to determine its character. It does not appear that the street had been previously paved at all. The mere fact that the ordinance provides that the macadam foundation already in the street shall be made level and smooth and used as a foundation for the improvement provided for by the ordinance, and that some of the curb-stones shall be used in the new work, does not make the work one of repair only. If the ordinance had provided that on the roadway so cleaned, filled and compacted, as specified, there should be placed a layer of granite blocks or a layer of vitrified brick, instead of layers of broken limestone and crushed granite, it would hardly be contended that the work would be one of mere repair. We are of the opinion that this objection was properly overruled.

Finding no error the judgment confirming the assessment will be affirmed.    *Judgment affirmed.*