JOHN D. BUSH et al.

v.

THE CITY OF PEORIA.

*Opinion filed June 23, 1905.*

1. MUNICIPAL CORPORATIONS—*street cannot be repaired by special assessment.* After a street has been improved by special assessment it is the duty of the city to keep it in repair, and the funds for this purpose should be provided by general taxation, and not by special assessment.

2. SAME—*city's determination as to what is a local improvement is not conclusive.* The power of a city to determine what is a local improvement is subject to review by the courts, and ordinances which, in view of the circumstances and conditions, are unreasonable, unjust and oppressive will be declared invalid.

3. SPECIAL ASSESSMENTS—*when improvement is not a matter of repairs.* Laying a new asphalt pavement after removing the old pavement down to the concrete foundation is not a matter of mere repairs, notwithstanding the old foundation is to be used for the new pavement after it has been partially renewed, and such work may be paid for by special assessment.

4. SAME—*city may determine whether a pavement shall be repaired or renewed.* It is within the power of a city council to determine whether a pavement shall be repaired or re-built, and its decision to re-build will not be held unreasonable where the evidence shows that the pavement has been twice extensively repaired, but has since become so worn down and full of holes and cracks that it would be impracticable to restore the surface by patching.

APPEAL from the County Court of Peoria county; the Hon. W. I. SLEMMONS, Judge, presiding.

STEVENS & HORTON, F. H. TICHENOR, and P. E. MANN, for appellants.

WALTER H. KIRK, City Attorney, for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

This is an appeal from a judgment entered in the county court of Peoria county confirming a special assessment levied under the authority of an ordinance of the city of Peoria

providing for the improvement of a portion of Moss avenue, in that city, to be paid for by special assessments on the property benefited.

A number of objections were presented, including the objection the property sought to be assessed would not be benefited by the proposed improvement. The objection that the property would not be benefited was withdrawn and waived.

But a single question is presented by the record, which is, does this ordinance provide for a local improvement, or only for the repair and maintenance of a local improvement previously made at the expense of the owners of property abutting thereon?

In 1891 the same portion of Moss avenue was improved by the city at the expense of the owners of abutting property. The avenue was then graded, curbed and paved, the pavement consisting of a concrete base five inches in thickness, upon which were laid a binder course and wearing surface of asphalt. Thirteen years thereafter the ordinance here under consideration was adopted. It, in substance, provided that the remainder of the present old asphalt pavement, (surface coat and cushion coat,) and refuse down to the concrete foundation lying thereunder, be entirely removed, and that a new asphalt pavement two and one-half inches thick, consisting of a binder course one and one-fourth inches thick and wearing surface one and one-fourth inches thick, be laid down in the place of the said old asphalt pavement and refuse, and that the said old concrete foundation, after it has been partially renewed, shall be the foundation for the new asphalt pavement to be laid.

It is provided in section 54 of the Local Improvement act, (Hurd's Stat. 1903, p. 403,) that "it shall be no objection to the legality of any local improvement that a similar one shall have been previously made in the same locality, if the ordinance therefor be recommended by the board of local improvements, as above provided; but nothing herein con-

tained shall be construed to interfere with any defense in said proceeding relating to the benefits received therefrom."

In the American and English Encyclopedia of Law (vol. 25, 2d ed. p. 1178,) it is said: "The re-paving or re-grading of a street, irrespective of the question whether the original paving or grading was paid for by special assessments, has been generally regarded as a local improvement for which a special assessment could be authorized."

It is the duty of the municipality to maintain and keep in repair a street after it has been improved by special assessments, and the funds to perform this duty are to be provided by general taxation,—not by assessments upon the abutting property or property benefited thereby. If the work authorized to be done by the ordinance here under consideration is that of maintenance and repair, the ordinance would necessarily be declared unreasonable, oppressive and invalid, for the reason that the burden of maintaining and repairing the street cannot lawfully be imposed upon the owners of abutting property. The General Assembly has delegated to the city council the power to determine what is a local improvement. The delegation of power is to legislate generally upon the subject, and is open to the revision of the courts, and ordinances that, in view of the existing circumstances and contemporaneous conditions, are unreasonable, unjust and oppressive will be declared invalid. (*City of Lake View* v. *Tate,* 130 Ill. 247; *Chicago and Northwestern Railway Co.* v. *Town of Cicero,* 154 id. 656; *Chicago and Alton Railroad Co.* v. *City of Pontiac,* 169 id. 155; *City of Chicago* v. *Brown,* 205 id. 568.) A question of fact is therefore presented by this record whether the improvement ordered to be made is merely ordinary repair of the avenue or whether the work is that of re-construction or re-building. If the latter, the work is not to be regarded as merely that of repair. (24 Am. & Eng. Ency. of Law,—2d ed.—471, and authorities collected in note 2.)

It is urged by counsel for the appellants that the pavement on the avenue is not worn out; that the surface is impaired, and that the work is only that of maintaining and repairing the surface and not an attempt to re-place a pavement that has been worn out; that fully eighty per cent of the asphalt upon the street is in good condition; that repairs are practicable, and that the asphalt now there would last for many years and that the cost of the repairs would be trifling compared with the total cost of re-surfacing; that the city has neglected its duty and allowed the street to get out of repair, and by this ordinance endeavors to repair it by re-surfacing it at the cost of the property owners.

We find in the record evidence showing that the pavement was full of holes in the surface material; that the asphaltum was worn down from its original thickness of two and one-half inches to one-half inch in some places and to one inch in other places, making the surface of the roadway uneven; that it has age-cracks in many places and that the asphaltum had disintegrated in many different areas in both the wearing surface and the binder course, from which holes and breaks have extended through to the concrete foundation. Expert witnesses testified that the asphalt pavement down to the foundation is no longer serviceable; that the asphaltum was most probably a poor quality when first placed in the street, and that it is now deficient in, if not devoid of, bitumen and other ingredients that are essential to its usefulness, and for which reason new asphalt material could not be joined to it and a firm union of the old and the new parts effected, and therefore the pavement could not be successfully patched by filling in the holes, cracks and defective areas; that not only the area of the holes, cracks and breaks would have to be taken out if an attempt were made to patch it, but that large areas in addition would have to be removed before a sufficiently sound side wall to join the new work to could be obtained, and that if patched, the old material would

soon go to pieces and leave the new patches entirely isolated and converted into bumps and elevations in the surface of the avenue. The opinion was expressed by experts that it was entirely impracticable to attempt to restore the surface of the street by mere repairs thereof. There was also evidence tending to rebut the charge that the city had omitted its duty to repair the pavement. The city engineer testified that within five years after the pavement had been laid, the asphalt company which laid it, in compliance with its guaranty so to do, made quite extensive repairs on the avenue; that it was again repaired in 1899 by the asphalt company under the direction of the city authorities and that the city paid for the work.

In view of the testimony produced upon the hearing we would not be warranted in holding that the trial court erred in ruling that the work was not that of mere repairs. It was within the scope of the power possessed by the city council to determine whether it was practicable to attempt to maintain the street by repairing it or whether a new pavement was required. The fact that the foundation on which the existing pavement had been laid was to be availed of as the foundation for the asphalt surface of the new pavement did not make the work necessarily one of repair only. (*Field* v. *City of Chicago*, 198 Ill. 224.) If the foundation in place on the roadway would serve as a sound and substantial base on which to rest the proposed new asphaltum surfacing, there is, as we said in the *Field case, supra,* "no reason why the same should be excavated and destroyed instead of being used in putting down the new pavement on the street."

The judgment appealed from is affirmed.

*Judgment affirmed.*