JONES et al., Appellants, v. PLUMMER, Respondent.

St. Louis Court of Appeals, April 6, 1909.

1. MUNICIPAL CORPORATIONS: "Macadamizing." The term "macadamizing" refers not only to the kind of material to be used in covering a street or road, but also the manner in which it is laid; it means *to cover* a street or road by a process introduced by Macadam, which consists of the use of small stones of uniform size consolidated and leveled by heavy rollers.

2. ———: ———: Reconstruction: Repair. Macadamizing may be laid upon any foundation whether soft or hard, and the relaying of macadam upon a street without disturbing the solid foundation upon which the former macadam had been laid was a "reconstruction" of the macadamizing and not

merely a "repair" of the street within the meaning of section 5858, Revised Statutes 1899, relating to cities of the third class.

3. ———: **Improving Street: Plans and Specifications.** Where a city of the third class orders the reconstruction of the pavement of a street, it is essential that the plans and specifications of the work to be done be filed with the city clerk by the city engineer and that the same be on file at the time of letting the contract; otherwise the taxbills issued in payment for the work would be invalid. [Section 5859, Revised Statutes 1899.]

4. ———: ———: ———: **Presumptions.** Special taxbills regularly issued for reconstructing a street in a city of the third class, under the provisions of sections 5858 and 5859, Revised Statutes 1899, are prima-facie evidence of the validity of the bills and the regularity of the proceedings for the special assessment; the presumption applies in a proceeding to enjoin the enforcement of the taxbills issued for such improvement. This carries the presumption that the plans and specifications for the work to be done were on file with the city clerk at the time the contract for it was let.

5. ———: ———: ———: ———: **Evidence.** In an action to enjoin the enforcement of taxbills issued for reconstructing the macadamizing of a street, evidence by an attorney for the plaintiff that he called upon the city clerk and asked for copies of all the papers on file in his office and particularly for the plans and specifications, when he was informed by the clerk that there were no plans and specifications on file, without designating the time at which the inquiry was made, is not sufficient to overcome the presumption of regularity in the proceedings and that such plans and specifications were on file at the time the contract for the work was let.

6. ———: ———: **Weight of Evidence.** In an action to enjoin the enforcement of special taxbills for reconstructing the macadamizing of a street, where the evidence was conflicting as to whether the work was done in accordance with the requirements of the contract for the same, and where there was abundant evidence to support a finding on such issue either way, the appellate court will defer to the finding of the trial court.

Appeal from Greene Circuit Court.—*Hon. James T. Neville,* Judge.

AFFIRMED.

*L. M. Haydon* and *J. P. McCammon* for appellants.

(1) The testimony—by plaintiff's witnesses as well as by defendant and his superintendent show that there was no disturbance of the rock foundation made when the street was originally paved—and that the resolution did not contemplate disturbing it, but merely cleaning off the loose dirt, leaves, etc., and placing a new surface on the stone foundation already there. This resurfacing is repair, not reconstruction, and calling the work reconstruction does not make it such. Covington v. Bullock, 103 S. W. 276; Farraher v. Keokuk, 82 N. W. 773; State ex rel. v. Railroad, 85 Mo. 277; Asphalt Paving Co. v. Hezel, 155 Mo. 403; O'Meara v. Green, 16 Mo. App. 118, 25 Mo. App. 198; Shoe Co. v. Jackson, 112 Fed. 159; State v. Patterson, 50 Atl. 621; Chicago v. Sheldon, 9 Wall. 76; City v. Railroad, 52 Atl. 51; State ex rel. v. Milling Co., 156 Mo. 630. (2) The statute gave to the council the power to repair streets—but it provided the method by which alone that power could be exercised. The council having adopted another method than that by which only they could legally exercise the power—their action was a nullity. Kolkmeyer & Co. v. City, 75 Mo. App. 683; Heidelberg v. St. Francois Co., 100 Mo. 74. "Municipal corporations are creatures of the law established for special purposes and their corporate acts must not only be authorized by their charters, but these acts must be done by such officers or agents and in such manner as the charter directs." City to use v. Eddy, 123 Mo. 558; City v. Martin, 68 S. W. 606, and authorities cited; Stewart v. City, 79 Mo. 603; Thompson v. City, 61 Mo. 282; City v. Scott, 104 M. A. 605. (3) If the work done was a reconstruction, the essential steps were not taken by the city council to make the taxbills a legal charge against the property of plaintiffs. There were no plans and specifications filed for said work in the office of the city clerk as were referred to in the resolution and required by the statute. This of itself is sufficient to invalidate the taxbills. City

v. Showman, 100 Mo. App. 323; Kneeland v. City, 18 Wis. 411; Dickey v. Holmes, 83 S. W. 982, 9 Mo. App. 74; Railroad v. Chicago, 51 N. E. 596; Cipcutt v. Yonkers, 31 N. Y. Supp. 659; Louisiana v. Shaffner, 104 Mo. App. 101; Barlow Co. v. O'Brien, 107 S. W. 25.

*W. D. Tatlow* and *Barbour & McDavid* for respondent.

(1) The special taxbills involved in this action are prima-facie evidence "of the regularity of the proceedings for such special assessment, of the validity of the bills, of the doing of the work and of the furnishing of the materials charged for and of the liability of the property to the charge stated in the bills." Therefore the taxbills cannot be overturned except by affirmative objections pleaded and clearly established by the testi mony. R. S. 1899, sec. 5858, as amended by Session Acts Missouri, 1901, p. 63; Carthage v. Badgley, 73 Mo. App. 123; Joplin ex rel. v. Hollingshead, 123 Mo. App. 602; Huling v. Stone Co., 87 Mo. App. 359. (2) The work done for which the taxbills were issued was reconstruction and not repair. This is a mixed question of law and fact. (3) Under the evidence the improvement was a reconstruction and the trial court was clearly right in so holding. The city, under its charter, is authorized to pave and reconstruct streets at the expense of the abutting property. This is a legislative power and is a continuing one; it may be exercised from time to time as the wants of the city may require, and of the necessity or expediency of its exercise the council is the sole judge. McCormick v. Patchin, 53 Mo. 33, 36; Farrar v. St. Louis, 80 Mo. 379, 391; Farrell v. Rammelkamp, 64 Mo. App. 425, 429; Estes v. Owen, 90 Mo. 113; Smith v. Tokener, 32 Mo. App. 601, 609; Ritterskamp v. Stifel, 59 Mo. App. 510; Heman v. Ring, 85 Mo. App. 231; Skinker v. Heman, 148 Mo. 349; Heman v. Franklin, 99 Mo. App. 346; Morley v. Carpenter, 22 Mo. App. 640; Hefferstein v. Lenkton, 52 Mo. 234; Land Co. v. Kansas

City, 172 Mo. 523, 533; Perkinson v. Schnaake, 108 Mo. App. 255.

NORTONI, J.—This is a suit in equity, seeking to enjoin the enforcement of certain special taxbills issued against the property of the various plaintiffs by the council of the city of Springfield. Upon a hearing, the court denied the relief and dismissed the bill. Plaintiffs prosecute the appeal. The special taxbills were issued in payment for the reconstruction of the macadamizing on Jefferson street. Plaintiff seek to enjoin their enforcement; first, on the ground that the taxes therein evidenced are invalid for the reason the levy was made for reconstructing the macadamizing mentioned when in truth and in fact the street was only repaired. All of the proceedings had in the city council pertain to reconstructing the macadamizing on Jefferson street; that is to say, the resolution declaring the same necessary and the ordinances pertaining to the matter, treat the improvement as reconstruction, and the taxes are assessed in accordance with the statute for such reconstruction. The same statute (sec. 5858, R. S. 1899, sec. 5858, Mo. Ann. St. 1906), however, provides that the city council shall have power to repair the macadamizing on any street and assess the same against the adjoining properties as therein indicated. In cases of repair to macadamizing on a street, however, the same statute requires the street to be divided into sections, a section being the distance from the center of one cross or intersecting street to the center of the next cross or intersecting street; and the cost in each section shall be assessed on the lots or tract of land fronting on either side of that section. It appears the street was not so divided into sections and it is therefore argued that as the improvement was a repair rather than a reconstruction, the taxbills should be enjoined for the reason in proceedings *in invitum,* the statutory requirements in respect to all precedent matters must be strictly complied with. It

appears from the evidence that Jefferson street was con-
structed in 1902. At this time a stone foundation of
about eight or ten inches in depth was securely laid. On
top of this, there were several inches of macadam. That
is to say, several inches of gravel, wetted and smoothly
rolled, was placed on this foundation, bringing the same
to a level of the grade of the street. By use, the gravel
or macadamizing had been worn out. The gravel had
nearly all disappeared. The street was in this condition
at the time the city council passed the resolution declar-
ing it necessary to reconstruct the macadamizing thereof.
This resolution, after so declaring, proceeds to direct
that the street should first be cleared of all dirt, vege-
table and perishable matter, after which the same should
be thoroughly spiked up and loosened, the surface of the
street to be thoroughly harrowed and raked, lumps there-
on to be taken out and depressions filled, so that the
surface should be practically smooth and parallel with
the grade of the street. It then provides that after this
is done, a layer of the best quality of river gravel shall
be laid thereon, thoroughly wetted and rolled smooth,
which shall be of sufficient depth on top of the founda-
tion to bring the street to a level with the true grade
thereof. It is required that no gravel shall be employed
the diameter of which exceeds two and one-half inches.
It appears the street was thus re-macadamized in ac-
cordance with this resolution. The argument that the
improvement was a repair rather than a reconstruction
of the macadamizing, proceeds from the fact that the
stone foundation which was laid in the street in the im-
provement of 1902, was left intact and not disturbed in
the present improvement. That is to say, the coat of
macadam provided for and placed upon the street in the
present improvement was placed on the old foundation
after removing all of the former coat thereof, without
rebuilding the foundation. It does appear that in a few
places where the stone foundation was slightly sunken,
the same was brought to a level by filling in with such

gravel as exceeded the dimensions to be used in macadamizing. Now this argument, when interpreted in the light of our statute on the subject, involves the idea that there must be a stone foundation under the macadamizing in order to render the work done macadamizing. Such is a false premise. The Standard Dictionary says, to macadamize is "to cover or pave, as a path or roadway, with small broken stone, on either a soft or hard substratum." It appears from this, the layer of small stones may be either on a hard or soft foundation. Certainly the mere employment of the word "macadamizing" does not essentially involve the idea of constructing a new stone foundation therefor. Judicially speaking, "the word 'macadamizing' has a fixed and definite meaning and refers not only to the kind of material to be used in covering the street or road, but also the manner in which it is to be laid. It means *to cover* a street or road by a process introduced by Macadam, which consists of the use of small stones of a uniform size, consolidated and levelled by heavy rollers." [Partridge v. Lucas, 99 Calif. 519; 33 Pac. 1082, 1083.] (The italics are ours.) It appears, then, that even though the old foundation in the street was not reconstructed, the macadamizing thereon being completely removed and relaid, was reconstructed within the meaning of the law. The city of Springfield is a city of the third class. Section 5858, R. S. 1899 (Mo. Ann. St. 1906), is parcel of its charter. This section empowers such cities, among other things, to pass ordinances to "reconstruct any macadamizing" on any of its streets, etc., and to pay the cost of macadamizing such streets by levying special assessments on all lots or tracts of land fronting or abutting on either side of such streets. This section confers complete authority upon the city to reconstruct the macadamizing on any of its streets and to assess the adjoining property for the improvement, identically as was done in this case. The ordinances and all of the proceedings in respect of the improvement, proceeded upon the theory that the work

was that of reconstruction of the macadamizing on Jefferson street. Now if macadamizing involved the building of a substratum or foundation to sustain the macadam, then of course the work in the present instance would be a repair rather than a reconstruction of the macadamizing. But it appearing that to macadamize is to lay and roll a stratum of small stones on any substratum or foundation, whether soft or hard, the macadamizing alone is completely reconstructed by wholly renewing the same upon a former foundation which was permitted to remain intact.

It is argued the court erred in not sustaining the injunction for the reason it appears the city engineer had omitted to file plans and specifications for the reconstruction work with the city clerk prior to the time of letting the contract to the defendant Plummer. If such fact conclusively appeared in the case, the argument would indeed be persuasive, for the statute (sec. 5859) provides that the work shall be let to the lowest and best bidder on plans and specifications filed therefor with the city clerk by the city engineer, etc. Now it is important indeed and essential for such plans and specifications to be on file with the clerk, as directed by the statute. This to the end that bidders may have an opportunity to examine this data for the purpose of intelligent, competitive bidding, all of which is presumed to inure to the benefit of the adjacent owner whose property is to be taxed on account of the improvement. It is an essential prerequisite to the power to make a valid assessment that the plans and specifications referred to should be on file with the city clerk at the time of letting the contract. If they are not thus on file, the taxbills thereafter issued in payment of the work will be invalid. [City of DeSoto ex rel. v. Showman, 100 Mo. App. 323; Barber Asphalt etc. Co. v. O'Brien, 128 Mo. App. 267, 107 S. W. 25.] In the absence of anything appearing to the contrary, the presumption which attends the regularity of official conduct generally, obtains to the extent

of supplying the fact that such plans and specifications were properly on file with the city clerk. Indeed, it is provided by the statute (sec. 5859) that the taxbills themselves shall in any action thereon, be *prima facie* evidence of the regularity of the proceedings for such special assessment, of the validity of the bills, of the doing of the work, and of the furnishing of materials charged therefor, and of the liability of the property to the charge stated in the bills. It is true this is not an action on the taxbills, but instead, it is one seeking to cancel their apparent obligation and to restrain their enforcement. However this may be, the presumption referred to obtains to the effect that the plans and specifications were on file with the city clerk and the burden rests upon the plaintiffs here to remove that presumption by introducing competent proof to the contrary. [City of Excelsior Springs ex rel. v. Ettenson, 120 Mo. App. 215, 96 S. W. 701.] There is no evidence whatever in the record tending to prove that the plans and specifications referred to were not on file with the city clerk at the time of letting the contract for the improvement. Mr. McCammon is the only witness who testified touching the matter. All of the evidence to be found in the record thereon is as follows: "I am one of the attorneys in the case, and I went to the city clerk and asked for copies of all the papers on file in his office in relation to this Jefferson street paving in controversy, and particularly asked for the plans and specifications, but was informed there were no plans and specifications on file in his office." Conceding all that is said by Mr. McCammon on this matter to be true, it does not appear therefrom that such plans and specifications were not on file at the time the contract for the improvement was let. In fact, it does not appear at what time the witness called upon the city clerk with respect to the matter mentioned. It may have been at the time of letting the contract or it may have been long after the improvement was made and the taxbills issued. It is to be inferred that the in-

quiry was made while the attorney was making an investigation as to the propriety of instituting this suit. At any rate, it is incumbent upon the plaintiffs to show that no plans and specifications were on file with the city clerk at the time the contract was let and there is nothing in the evidence of Mr. McCammon which tends to prove that fact. They may have been on file then and afterwards lost or mislaid. Aside from this, the witness does not purport to testify from his personal knowledge of the matter but rather gives evidence to the effect that the city clerk informed him there were no plans and specifications on file in his office. This evidence is the merest hearsay, and although it was introduced at the trial without objection, the case being in equity it could be properly disregarded by the court, and no doubt was. Aside from the presumption that the plans and specifications were on file with the clerk, the resolution declaring the improvement necessary refers thereto as though they were as a matter of fact then on file. It is said in the resolution the improvement shall be done in accordance with the plans and specifications and estimates of the city engineer now on file in the office of the city clerk. Of course this resolution may not be conclusive on the matter. However that may be, it recites that they were on file at that time, which, of course, was some time prior to the date of letting the contract, and in the absence of evidence to the contrary, it is to be presumed they were on file at the time required by the statute. The evidence introduced on this matter was wholly insufficient to overcome the presumption of law to the contrary.

There is much said, pro and con, in the evidence, on the issue as to whether or not the work of reconstructing the macadamizing was done in accordance with the requirements of the contract. There is abundance of evidence to support a finding either way on the subject. In view of this fact, we defer to the judgment of the trial court thereon.

Finding no reversible error in the record, the judgment will be affirmed. It is so ordered. *Reynolds, P. J.,* and *Goode, J.,* concur.