JOSEPH J. FUCHS, Appellant, v. THE CITY OF CEDAR RAPIDS, IOWA, LOUIS ROTH, Mayor, L. J. STOREY, City Clerk, Appellees.

Municipal corporations: STREETS: REPAIR: ASSESSMENT OF COST. A city has no authority to assess the cost of merely repairing a street against abutting property; but to bring the city within the statute and authorize an assessment for the cost, it must appear that the work proposed constitutes a reconstruction of the street improvement, as distinguished from a repair of the original construction.  In the instant case the contemplated street improvement was a work of reconstruction, rather than of repair, and the city was authorized to assess the cost against the abutting property.

*Appeal from Superior Court of Cedar Rapids.*—HON. C. B. ROBBINS, Judge.

WEDNESDAY, FEBRUARY 12, 1913.

ACTION to enjoin assessment for street improvements. Decree for defendant.  Plaintiff appeals.—*Affirmed.*

*Jamison, Smyth & Hahnn,* for appellant.

*Wm. Chamberlain,* City Solicitor, *C. F. Luberger,* Assistant City Solicitor, and *Don Barnes,* for appellees.

GAYNOR, J.—On the 4th day of October, 1912, the plaintiff filed his petition in the superior court of Cedar Rapids, alleging, among other things, that on the 16th day of August, 1912, the city council of Cedar Rapids passed a resolution of necessity declaring that, for resurfacing with sheet asphalt certain streets and avenues, a public necessity existed within the city, among which streets and alleys was Second avenue east from Fourteenth street to Seventeenth street; the resurfacing to consist of removing the present asphalt wearing surface and binder course from a five-inch concrete base, which now lies in said street, said concrete base being a part of the present asphalt paving existing upon said avenue, and resurfacing the said five-inch concrete base with a one-half inch binder course and one and one-half inches wearing surface of sheet asphalt; that the said resolution of necessity further provided that the cost of the work aforesaid should be assessed against the property abutting upon said improvement; that thereafter, and in pursuance of said resolution of necessity, the city council passed a resolution ordering that said street be so resurfaced, and that the cost of the same be assessed as a special tax against the property abutting thereon; that thereafter the city council ordered and directed the city clerk to advertise for proposal and bids for the construction of the same; that the city clerk did so advertise; that thereafter, in due form, the city council passed a resolution awarding said contract to the Ford Paving Company, and directed the mayor and city clerk to enter into a contract with said company for the construction of said improvements, to be paid for as aforesaid by such special assessment, and plaintiff alleges that, unless restrained by the court, such contract will be entered into, and the city bound thereby; that

the plaintiff is the owner of lots lying upon Second avenue between the points aforesaid, and abutting upon the improvements so ordered to be made, and will be liable to special assessment for said improvements. Plaintiff further says that his lot aforesaid was assessed with its proportionate share of the original cost of the original construction of said pavement now intended to be resurfaced, as aforesaid, and that said assessment was duly paid; that, since said pavement was originally constructed, the city has made no repairs thereon, but suffered and permitted the wearing surface to become out of repair, and out of this grows the necessity for resurfacing. The plaintiff claims that the work aforesaid does not constitute a reconstruction of said pavement, as contemplated by the statute relating to special assessments, but a mere repair; and, as such, the cost thereof is not assessable against the abutting property. Therefore the plaintiff prays for a temporary writ enjoining and restraining the defendants from entering into, or signing, any contract purporting to bind the city to cause said work to be done and the cost thereof to be assessed against the abutting property, and especially against the property of this plaintiff; and that, upon final hearing, the injunction be made perpetual.

The defendants admit each and every allegation of plaintiff's petition, but allege, in addition to said facts, that the company which originally constructed said pavement did, in the year 1908, make extensive repairs upon said pavement, and allege that said pavement, originally put in, was constructed in the year 1900 and 1901, and has been in continuous use since that time. Defendants, however, deny the legal conclusions of the plaintiff wherein the plaintiff says that the contemplated improvement complained of in this suit is not a reconstruction of said pavement, but constitutes merely a repair thereon.

This cause was tried to the court upon the pleadings, and upon the following agreed statement of facts which, so far as material to this controversy, under the issues, are as follows:

That that portion of Second avenue upon which plaintiff's lot abuts was paved in 1901, with an asphalt pavement, consisting of a four-inch foundation of concrete with a one-inch binder course composed of crushed rock and asphalt cement, and a two-inch wearing surface of sheet asphalt; that said original pavement was constructed under a contract with one R. F. Conway Company, and, upon its completion, was accepted by the city, and special assessments were levied against the abutting property, including the lot now owned by the plaintiff, to defray the cost of said improvement, and the plaintiff and his grantors have paid said special assessment so made; that the city of Cedar Rapids has never made any repairs upon said pavement, but that in 1908 the Conway Company, having a bond to so do, did make extensive repairs thereon, patching and resurfacing all places in said pavement where the wearing surface had worn through; that the bond of the said Conway Company required it to make repairs required for the period of seven years; that the sheet asphalt wearing surface upon said pavement, at the present time, is so disintegrated, decayed, and worn out as to render the pavement unfit for public travel; that the proposed improvement now in contemplation, at which this injunction is aimed, is as follows: The wearing surface and binder course now remaining upon the original concrete base of four inches are to be fully removed, taken away, and a new surface to be constructed upon the said original concrete base, to consist of one-inch binder course to be composed of crushed stone and asphaltic cement, and one and one-half inch surface of sheet asphalt, all to be done according to the plans and specifications—that it is the purpose and intention of the defendant city to levy against the abutting property, including the property of this plaintiff, the cost of the construction of said improvement, and the defendant city will so cause said improvement to be constructed, and assessments made, as aforesaid, against the property of this plaintiff, for the improvement aforesaid, unless restrained by this court.

The only portion of the plans and specifications material to be considered reads as follows:

In removing the old pavement, care must be taken not to injure the foundation. All places in the surface of the

foundation, more than two and one-half inches below the finished grade of the pavement, shall be filled with new concrete mixed one part Portland cement to four parts clean river sand. Where old concrete is too high, it shall be cut down to two and one-half inches below the finished grade of the pavement.

It will be noticed from the foregoing statements that there is no fact controversy here, and that but one question is presented, and that is: Whether or not the proposed improvements or contemplated work constitutes a reconstruction, such as is provided for and authorized in section 792 of the Code, or whether it constitutes a repair merely of the pavement, as originally constructed, and this is the only question here presented to this court for its determination.

The statute provides (section 792) :

Cities shall have power to improve any street, highway, avenue or alley by grading, parking, curbing, paving, graveling, macadamizing and guttering the same, or any part thereof, and to provide for the making and reconstruction of such street improvements, and to assess the cost on abutting property as provided in this chapter.

Upon the hearing in the court below, plaintiff's petition was dismissed; the court having found that the work contemplated constituted a reconstruction of the pavement, as contemplated by the statute, and came within the provisions of the statute authorizing an assessment, for the costs thereof, against abutting property. It will be noticed that this statute does not authorize the city to assess the cost of mere repairs against abutting property. To bring the city within the provisions of this statute, and to authorize the city to assess, against abutting property owners, the cost of the contemplated improvements, it must appear that the work proposed constitutes a reconstruction of such street improvements, as distinguished from a repair of the original construction.

To "repair" presupposes the existence of the thing to

be repaired; thus we say the thing needs repairing; the thing is out of repair; and so, when we speak of repairs, we assume that the thing to be repaired is in existence, and the word "repair" contemplates an existing structure or thing which has become imperfect by reason of the action of the elements, or otherwise; and, when we repair, we restore to a sound or good state, after decay, waste, injury, or partial destruction, the existing structure or thing which needs to be restored to its original condition, or, in other words, we supply, in the original existing structure, that which is lost or destroyed, and thereby restore it to the condition in which it originally existed, as near as may be.

Reconstruction presupposes the nonexistence of the thing to be reconstructed, as an entity; that the thing, before existing, has lost its entity; and "reconstruction" is defined as follows: "To construct again; to rebuild; to restore again as an entity the thing which was lost or destroyed"—and it is apparent that the Legislature meant by the word "reconstruct" to rebuild (that is, to construct again the thing which, as an entity, has been lost or destroyed); and the fact that in reconstruction some of the material or parts which entered into the composition of the original entity are used does not deprive it of its designation of a reconstructed thing. To illustrate: If a house is completely torn down, and its entity as a house destroyed, the fact that no material was used in rebuilding, except what had formerly been in the building, as originally constructed, would not justify one in saying, wishing to speak correctly, that the house was repaired, but rather that it was rebuilt, or reconstructed.

Let us turn now to the stipulation made by the parties, hereinbefore referred to, and see how this street was originally constructed, and what its condition was at the time of the proposed improvement, and what improvements were proposed to be made on said street by the city. As to the first proposition, it appears that in 1901 the street in front of plaintiff's property was paved with asphalt, and thereafter known as

an asphalt pavement; that it consisted of a four-inch foundation of concrete, with a one-inch binder course composed of crushed rock and asphaltic cement, and on top thereof a two-inch wearing surface of sheet asphalt. Second, that the sheet asphalt wearing surface upon said pavement, at the present time, is so disintegrated, decayed, and worn out as to render the pavement unfit for public travel. Third, that the wearing surface and binder course now remaining upon the original concrete base of four inches are to be fully removed, and a new surface, to be constructed upon the original concrete base, to consist of one-inch binder course to be composed of crushed stone and asphaltic cement, and a one and one-half-inch surface of sheet asphalt. The necessity for the work was determined by the city, and with this determination we have nothing to do. The question, therefore, is, Do the facts so stipulated by the parties show such a destruction of the asphalt pavement that the contemplated improvement constitutes a reconstruction or simply a repair thereof?

We hold that these facts show a destruction of the original pavement as an entity; that the work contemplated involves a reconstruction of the same upon the foundation upon which the original structure rested. And we hold this for the following reasons: First. The city had a right to determine the public necessity for this work; that it was a public necessity; and they did so determine. Second. The city had a right to determine how this public necessity should be met, and how the work should be done to meet this necessity. Third. That the work contemplated involves the destruction of the entire original structure except the foundation. Fourth. That the contemplated improvement is a new and original structure upon the old foundation. Fifth. That the work of rebuilding on the old foundation is a reconstruction of the asphalt pavement heretofore existing. And we further hold that, being a reconstruction, the cost thereof was properly assessable against the abutting property.

Now let us see what the authorities have to say on this

proposition. You take the case of *Robertson v. City of Omaha,* found in 55 Neb. 718 (76 N. W. 442, 44 L. R. A. 534). In that case the street was paved with cedar block laid on a concrete foundation; that the pavement had become in such a dilapidated and worthless condition that it was unfit for travel; and an ordinance was passed edclaring the necessity existed—that is, a public necessity—for repaving that portion of the street, and thereafter another ordinance was passed for repaving said street by removing the cedar blocks from the concrete paving, and replacing them with vitrified brick, and the contract was duly let to so do, which work was fully performed, and the improvements so made accepted by the city. And thereafter a special assessment was made to meet the cost of said improvement, and a suit was instituted to prevent the levy of said special taxes, and it was urged in that case that the work was not a repavement of the street, but was merely a repair of an existing pavement, and that the city itself was liable therefor, and that it possessed no authority to impose a special assessment against the real estate of the plaintiff to pay the same. The court says: "That this contention is grounded upon the single fact that the concrete foundation of the former cedar block pavement was utilized in making the improvement in controversy. The entire wearing surface of wood of the old pavement was removed, and the mere using of the old base of concrete did not constitute a work of ordinary repair, under and within the meaning and contemplation of the statute." The statute referred to in this decision, after authorizing the levy and collection of special taxes and assessments upon the lots or pieces of ground abutting upon, or adjacent to, any street to defray the costs and expenses of improving and repairing said street, declares: "That the above provision shall not apply to ordinary repair of streets which shall be paid out of the general fund of the city." See, also, *Jones v. Plummer,* 137 Mo. App. 337 (118 S. W. 109). See, also, *Field v. City of Chicago,* 198 Ill. 224 (64 N. E. 840); also *McCaffrey v. City of*

*Omaha,* 72 Neb. 583 (101 N. W. 251). See, also, *Barber Asphalt Pavnig Co. v. Muchenberger,* 105 Mo. App. 47 (78 S. W. 280), wherein it is held: "In performing a contract for a street improvement, the old asphaltum was removed, and the old concrete base was replaced by new material, where necessary. Where no concrete existed, new concrete was used not more than six inches in depth, and the finished surface made to conform to a plane parallel with, and three inches below, the finished surface of the pavement. Wherever the earth where the new concrete was used was soft and spongy, it was dug up and repaired. Wherever the concrete base then in place was below a point parallel to three inches below the finished surface of the pavement, new concrete was laid on the old so as to bring its surface up to such parallel; and, wherever such base was above such point, it was cut down to the same parallel. In addition, a binder course of bituminous concrete, one and one-half inches thick, composed of clean and broken stone, was laid on the concrete base, and on this foundation a compressed asphalt wearing surface one and one-half inches thick was placed." It was held that the work so done was not repairs; that it was not an ordinary repair of the street.

As bearing upon the question as to whether or not the contemplated improvement constituted a reconstruction, and not a repair, we submit the case of *Bush v. City of Peoria,* 215 Ill. 515 (74 N. E. 797). This case was an appeal from a judgment entered in the county court of Peoria county confirming a special assessment levied under the authority of an ordinance of the city for the improvement of a portion of Moss avenue, in that city, to be paid for by special assessment on the property benefited. The court in that opinion said: "But a single question is presented by the record, and that is, Does the ordinance provide for a local improvement, or only for the repair and maintenance of a local improvement previously made at the expense of the owners of the property abutting thereon?" It appears that in 1891

this avenue was graded, curbed, and paved at the expense of the owners of abutting property; that the pavement consisted of a concrete base five inches in thickness, upon which were laid a binder course and a wearing surface of asphalt. The ordinance under which this work was attempted provided: "That the old asphalt pavement, surface coat and cushion coat and refuse, down to the concrete foundation lying thereunder, be entirely removed, and a new asphalt pavement two and one-half inches thick consisting of a binder course one and one-fourth inches thick, and a wearing surface one and one-fourth inches thick, be laid in the place of said old asphalt pavement and refuse, and that 'the old concrete foundation be the foundation for the new asphalt pavement." The court in deciding this case said: "A question of fact is presented by the record, and that is whether the improvement ordered to be made is merely an ordinary repair of the avenue, or whether the work is that of reconstruction or rebuilding"— and the court said: "We find, in the record, evidence showing that the pavement was full of holes in the surface material; that the asphaltum was worn down from its original thickness of two and one-half inches to one-half inch in some places, and to one inch in other places, making the surface of the roadway uneven; that it was cracked in many places by age; that the asphaltum had disintegrated in many different areas, both in the wearing surface and the binder course, from which holes and breaks have extended through to the concrete foundation.' The court further says that it was within the scope and power possessed by the city to determine whether it was practicable to maintain the street by repairing, or whether a new pavement was required. The fact that the foundation on which the existing pavement had been laid was to be availed of as the foundation for the asphalt surface of the new pavement did not make the work one of repair only. If the old foundation would serve as a sound and substantial base on which to rest the new asphaltum surfacing, there is no reason why the same should be excavated and de-

stroyed, instead of being used in putting down the new pavement on the street." See *Farraher v. City of Keokuk,* 111 Iowa, 310.

On the whole record, we think the judgment of the court was right, and should be affirmed; therefore it is *Affirmed.*