M. A. CLARK, Appellant, v. CHARLES N. MARTIN, County Treasurer, Appellee.

MUNICIPAL CORPORATIONS: Public Improvements—Permanent
1 Sidewalks—Authorization. The construction or reconstruction of permanent sidewalks must be authorized *by the city council,* and the authorization must be aimed at some *individual* walk. It follows that the council may not assume to invest its street officials with power to go forth over the city, and to construct or reconstruct such permanent walks as they may see fit, and, under such delegated authority, further assume to assess the cost to abutting property. (Sec. 779, Code Supp., 1913.)

MUNICIPAL CORPORATIONS: Public Improvements—Sidewalks—
2 Construction—Reconstruction—Repair—Notice. Permanent sidewalks may be "constructed" or "reconstructed" and the cost assessed to abutting property only *after* due notice to the property owner of the proposal to construct, etc. (Secs. 779, 810, Code Supp., 1913.)

Permanent sidewalks may be "repaired" and the cost assessed to abutting property without notice to the property owner. (Sec. 780, Code, 1897.)

Record reviewed, and held that, where a permanent cement walk consisted of 1,392 sq. ft., and 904 sq. ft. thereof was wholly removed and replaced at a greater depth, the work constituted a *reconstruction*, and not a *repair*, with consequent non-right to assess the cost, owing to want of notice.

**MUNICIPAL CORPORATIONS:** Public Improvements—Permanent
**3** Sidewalks—"Reconstruction" and "Repair" Defined. "Reconstruction" and "repair," as applied to permanent sidewalks, defined.

**MUNICIPAL CORPORATIONS:** Public Improvements—Assess-
**4** ments En Masse against Divers Lots. An assessment *en masse* against several lots, to defray the cost of a permanent sidewalk abutting on all of said lots, is illegal. (Sec. 825, Code Supp., 1913.)

*Appeal from Woodbury District Court.*—J. W. ANDERSON, Judge.

FEBRUARY 8, 1918.

SUIT to enjoin the collection of a special assessment levied on plaintiff's lots, resulted, on hearing, in the dismissal of the petition. The plaintiff appeals.—*Reversed.*

*Marks & Marks,* for appellant.

*C. N. Jepson,* for appellee.

1. MUNICIPAL
   CORPORATIONS:
   public im-
   provements:
   permanent
   sidewalks:
   authorization.

LADD, J.—It appeared, on hearing, that plaintiff owned Lots 5 to 11, inclusive, in Block 1 of Mile's Addition to the Incorporated Town of Oto, except the south one foot of Lot 11, having a frontage of 174 feet. There was a building on each of the three south lots, 9, 10 and 11. On August 7, 1912, the town council met in special session, and adopted a motion "that the street and alley committee should, after examining, be empowered to condemn any walk or crossing, and order new walks, or repairs as they saw fit, also have any needed work or repairs made on streets that they deemed necessary and advisable."

Thereupon, the street and alley committee entered into

a written contract with one Downing, to do the work at 12 cents a square foot. The cost was $108.48, which the town council assessed against the lots *en masse*. Plaintiff sought to have the collection thereof enjoined on two grounds: (1) That the sidewalk was reconstructed, rather than repaired, without complying with Section 779 of the Code; and (2) the assessment was not legal.

I. Section 779 of Code Supplement, 1913, authorized the council to provide for the construction, reconstruction, or repair of permanent sidewalks. "But unless the owners of a majority of the lineal feet of the property fronting on the improvements referred to in this section petition the council therefor, the same shall not be made unless three fourths of all the members of the council shall by vote order the making thereof."

The council was not petitioned, nor was there a vote taken with reference to the particular improvement. What was done was ordered by the street committee only in pursuance of the general powers sought to have been conferred by the council. To authorize the construction or reconstruction of a permanent sidewalk, in the absence of a petition, three fourths of all the members must have voted so to do with reference to the particular walk proposed to be constructed or rebuilt, and the power to determine may not be delegated to a committee or others. The proceedings are *ad invitum*, and must be strictly pursued. If, then, the walk was reconstructed, this was done without authority, and the assessment was void.

2. MUNICIPAL CORPORATIONS: public improvements: sidewalks: construction: reconstruction: repair: notice.

.. Appellee contends, however, that what was done was in the way of repairs; and, if so, Section 780 of the Code authorized the council to cause these to be made "without notice to the property owner, and assess the expense thereof on the property in front of which such repairs are made, and the same shall be certified

and collected as other taxes."

Plaintiff had negotiated with Downing to repair the walk, and had so informed a member of the streets and alleys committee, who objected to repairs, and remarked that "We are not going to stand for any repairs on this walk. It has to be torn out and a new walk put in." Downing testified that the committee wanted the "old walk broken, torn out, and put in new;" that he put in 904 square feet of walk.

"I dug out parts of the old walk entire and dug the ground down two inches and pounded in a small amount of old material for a foundation, and then put in new concrete walk six inches thick where I had torn out the old. The old was four inches thick. I also put in a curb six inches and ten inches deep along the front of the walk. This extended down four inches below the level of the street. Mr. Cook, the town marshal and street commissioner, told me how to build the walk, and I had a written contract. He also directed me what squares of the old walk they wanted taken out. I took out all squares where the facing was cracked loose from the concrete: the squares left were practically good. The facing was from one-fourth to one-half inch thick. Also took out the squares where the squares themselves were broken up. The concrete in the old walk was not good. * * * I used some of the old facing, pounded it up as a foundation for the new walk, but none in the concrete itself. * * * No square was removed unless it was broken or cracked on the top. * * * The curb that that I put in did not make the work cost Mr. Clark any more."

The street commissioner testified that:

"We removed all of the old work we thought was necessary to make the walk stable to walk upon, so that the new parts and the old parts left, we had good serviceable walk. * * * The new portions of the walk were two inches thicker, and also had more cement in it. A six-inch walk

would cost more than a four-inch walk. No new walk at all was put in at that time in front of Lot 5. 'That was in good condition at that time. In front of Lot 7, all of the old walk was taken out, and an entire new walk put in. In front of Lots 6, 8, 9, 10, and the north 24 feet of 11, there was part new and part old walk, after the work was done."

Plaintiff had testified to having examined the walk shortly before the trial, and that:

"There was no new walk in front of Lot 5; in part of Lot 6, the walk is part old and part new; in front of Lot 7, it is all new walk; part of Lot 8 is all new, with exception of about 4 feet square, 16 square feet. Part of Lot 9 is all new except one block, 4x8, 32 square feet. In part of 10 and in 24 feet of 11, it is about half new. All of the front half of 10 next to the street is new; also 11. All the back along the lots is old, except 5 feet at each end."

8. MUNICIPAL CORPORATIONS: public improvements: permanent sidewalks: "reconstruction" and "repair" defined.
This evidence leaves no doubt that the committee supposed the walk was being reconstructed, rather than repaired; and this seems to have been true. "To repair" means "to restore to a sound state or condition after injury or partial decay or destruction, or to mend any structure or thing which requires restoring or mending." *Farraher v. City of Keokuk*, 111 Iowa 310; *Fuchs v. City of Cedar Rapids*, 158 Iowa 392; 34 Cyc. 1338; *Wattles v. South Omaha I. & C. Co.*, 50 Neb. 251 (61 Am. St. 554).

"To reconstruct" means "to rebuild, to construct again, or to rebuild or reconstruct again." See above decisions, and 34 Cyc. 574. Reconstruction presupposes the demolition, or at least the nonexistence, of the thing to be reconstructed as an entity; and to reconstruct is to construct again that which, as an entity, has been lost or destroyed. *Fuchs v. City of Cedar Rapids, supra.*

Both the demolition and the reconstruction may proceed at the same time. The evidence disclosed that squares of the total areas of 904 square feet, out of the whole surface of the walk, amounting to 1,392 square feet, were removed entirely, the earth excavated 2 inches deeper, and the walk wholly rebuilt. The squares left were not disturbed in any manner. In front of Lots 6 and 7, the walk was all new.

We are persuaded that what was done

4. MUNICIPAL CORPORATIONS: public improvements: assessments *en masse* against divers lots.

must be held to have been a reconstruction of portions of the walk, and not the mere repair thereof. Suggestions of appellee that plaintiff is estopped, inasmuch as he observed the work progress without objecting, are disposed of by the fact that his testimony that he was absent during the period the work was being done is uncontradicted. The levy must be regarded as void. Even were this not so, however, the assessment must have been set aside because invalid, for that it was levied against the lots *en masse*, instead of being apportioned against them severally. *Kneebs v. City of Sioux City*, 156 Iowa 607; *Stutsman v. City of Burlington*, 127 Iowa 563. See *Royce v. Town of Aplington*, 90 Iowa 352.—*Reversed.*

PRESTON, C. J., EVANS and GAYNOR, JJ., concur.