J. A. GALLAHER, Administrator, substituted plaintiff for J. H. GALLAHER, Deceased, Appellant, v. HENRY GARLAND, JR., Treasurer, ET AL., Appellees.

**Street improvement:** ABUTTING PROPERTY: VALIDITY OF ASSESSMENT.

1 Where a city has authority only to gravel a street at the expense of abutting property, and in connection therewith incurs and as-

sesses against the property an expense for grading, which is unnecessary for the purpose of graveling and there is no way of separating such expense, the assessment is void *in toto.*

**Same.** Where the published notice of a street improvement does not correspond with the ordinance and resolution, or the notice for proposals for bids does not cover the existing situation, an assessment of abutting property for the cost is void.

**Assessment: WAIVER OF OBJECTION.** A property owner who has no knowledge that the cost of grading a street is to be assessed against his property does not waive objection thereto by failing to protest as the work goes on.

**Same.** Where an assessment is void, failure to object to the proceeding before the city council will not preclude a suit to restrain collection thereof.

**Tender.** Where an assessment is void or where it does not appear what portion of the same might have been legally assessed, a tender thereof is not required to maintain a suit to restrain the collection.

*Appeal from Greene District Court.*— HON. F. M. POWERS, Judge.

SATURDAY, DECEMBER 17, 1904.

SUIT in equity to enjoin the sale of certain lots by defendant Garland, county treasurer, for the amount of assessments levied against them by the city council of the city of Jefferson for grading, graveling, and macadamizing streets in front thereof. The trial court dismissed the petition, and plaintiff, Gallaher, appealed. After the appeal was taken, plaintiff died, and his administrator has been substituted. — *Reversed.*

*Gallaher & Graham,* for appellant.

*Wilson & Albert,* for appellees.

them, but, as one seems to be sufficient to sustain plaintiff's
    DEEMER, C. J.— Many reasons are presented why the lots should not be sold to pay the assessments levied against

action, we shall consider but that one. The city council of the city of Jefferson passed a resolution for grading and graveling certain of its streets. Notice of a graveling resolution was given as provided by law, and the time and place fixed for the lodging of objections thereto. No objections having been filed, the proposition was finally adopted, and it was ordered that the expense of the improvement be taxed to the abutting property. Notice for bids for the graveling of the streets was thereupon given, and bids were received at the time fixed in the notice; and the contract for the work, including the grading of the streets, was awarded different contractors. The original contracts are before us, and they provide for the payment of an omnibus sum for doing the work of grading and graveling the streets. One was for the sum of $177 and the other for $350. Thereafter a resolution was passed to the effect that the cost of graveling and sub-grading be taxed to abutting property. Notice thereof was given, and a time fixed therein for those who were interested to appear and file objections. No one appearing, the cost of the entire work was assessed against abutting property according to lineal frontage. These taxes were certified to the county authorities as by law provided, and the county treasurer was about to sell plaintiff's lots, which abutted on the improved street, for the amount of the assessments levied against them, when this action was brought. It appears without controversy that not only the resolutions passed by the city, but the contracts made for the improvement, contemplated and provided for the grading or cutting down of the streets in some cases as much as fourteen inches, and in other places there was to be a substantial fill to bring the street to the established grade. This grading was much more than was necessary to make way for the graveling, and was done for the purpose of bringing the streets, when graveled, to the established grade. Plaintiff's intestate did not appear before the city council, because he did not understand that the grading of the streets was to be included in the

improvement, and had no idea that an attempt would be made to charge him therewith, until after the work was completed. None of the published notices indicated that grading of the streets at the expense of abutting property owners was proposed. They all referred simply to the graveling of the streets. Plaintiff's intestate offered to pay his proportion of the expense of graveling the streets, and during the trial renewed his offer, but both were refused. He did not, as we have said, at any time appear before the council to object either to the improvement or to the assessment against his property.

The city had no authority to do any grading of its streets, except such as was necessary for the purpose of receiving the gravel, and to charge the expense thereof to abut-

1. ABUTTING PROPERTY: validity of assessment. ting property owners, and in so far as it attempted to do so its action was void. Code, section 792; *Allen v. City of Davenport,* 107 Iowa, 90, and cases cited. However, its entire scheme contemplated a grading of the streets to bring them to the established grade, as well as graveling; and its proposal for bids, the bids themselves, and the final contracts, provided for the doing of this work. The bids were for a lump sum, as also were the contracts; and there is no certain way of telling how much of the contract prices was for subgrading and graveling, for which the abutting property might be charged, and how much for grading proper, which the city could do at its own expense only. Indeed, the contract for doing the work for which the city might lawfully charge abutting property was not let to the lowest bidder or bidders, as by statute required, and there is no way of telling how much may be legitimately taxed against abutting property. An attempt to do so by oral evidence was made, but it was, of course, a practical failure, and the assessments were not made on that basis. If there were any accurate method whereby to establish the cost of the improvement for which plaintiff's property might properly be assessed, there yet

would remain several objections to the actions of the city council, which are fatal to the assessments. It had no power to make such omnibus contracts, and no right to include grading with the graveling of its streets in such a manner as that the graveling and necessary subgrading proposition could not be let to the lowest bidder therefor. If there were any way of divorcing the legal from the unauthorized acts of the council, we might perhaps sustain an assessment for the proper amount, as against this objection; but such an attempt would be pure guesswork, for the city at no time treated the improvements as separate and distinct. *Dyer v. Chase,* 52 Cal. 441; *In re Public School,* 75 N. Y. 324.

Again, the published notices did not correspond with the ordinances and resolutions; nor did the notices for proposals for bids cover the situation as it then existed. This of itself is a fatal defect.

**2. SAME.**

But it is argued that plaintiff's intestate waived all objections by standing by and seeing the work done without protest. Had he known that there would be an attempt made to charge his property with the expense of grading, this might, perhaps, be true; but the evidence shows affirmatively that he did not know of this fact; hence there was and can be no waiver.

**3. ASSESSMENTS: waiver of objection.**

Further, it is argued that, as he did not appear before the city council and object to its action in the premises, he cannot now proceed in equity. If the assessments were void, he was not bound to appear and object, but might proceed in equity after the illegal assessments were made. *C. M. & St. P. R. R. v. Phillips,* 111 Iowa, 377. That they were void, is, we think, apparent from what has already been said. The city had no authority to proceed as it did.

**4. SAME.**

Again, it is contended that, as plaintiff did not offer to pay the amount which might properly be assessed against him, his action will not lie. There are two answers to this.

The first is that he did offer to pay whatever amount could
properly be taxed against his property, and
the second is that there is no means of show-
ing what amount he should pay.   The matters were so inter-
mingled that it is impossible to say what amount should be
taxed.   Moreover, the defendants did not make any showing
as to what amount plaintiff's intestate should pay.   In *Allen
v. Davenport, supra,* and other like cases, relied upon by ap-
pellees, the assessments and contracts were separately made;
and the exact amount of the legal assessment could be easily
determined.   Aside from this, the entire proceedings were
void, for the reasons stated, and plaintiff was not bound to
tender anything before bringing his action.

5. TENDER.

Whether or not action may be had against the property
or the owners thereof on a reassessment, or on the basis of
*quantum meruit,* we shall not now attempt to decide.   There
were such defects in the proceedings that plaintiff's intestate
was entitled to enjoin the sale of his property for the invalid
assessments.   The decree is therefore reversed, and the
cause remanded for further proceedings in harmony with
this opinion.

Reversed and *remanded.*