G. D. ELLYSON et al., Appellees, v. CITY OF DES MOINES et al. Appellants.

MUNICIPAL CORPORATIONS: Public Improvements—Jurisdiction —Ordering ''Repairs'' and Performing ''Reconstruction''—Effect —Injunction. Jurisdiction to *repair* a street improvement, once attaching under proper proceedings of the council, is not lost because *part* of the work, though of the same general nature as the repair work, really constitutes a *reconstruction.* Inasmuch as the city has power to either *repair* or *reconstruct* (Secs. 751, 792, Code Supp., 1913), it follows that the act of *reconstructing* part of the improvement instead of repairing it is an "irregularity" only, and injunction will not lie to restrain the levy of an assessment, and the sole remedy of the objecting property owners is to reach such "irregularity" by objections filed with the council, and to appeal if the order of the council be adverse. (Sec. 824, Code, 1897.)

*Appeal from Polk District Court.*—HUBERT UTTERBACK,
Judge.

THURSDAY, APRIL 5, 1917.

ACTION in equity, by which plaintiffs seek to enjoin the
officers of defendant city from levying a paving assessment.
Appellees are property owners along Grand Avenue in the
city of Des Moines, owning property abutting on or lying
within 300 feet of either side of Grand Avenue, between the
west line of Nineteenth Street and the east line of Twen-
ty-eighth Street. The defendants are officers of the city,
and the contractor is also made a defendant. The petition
was filed on September 2, 1915. The substance of the com-
plaint by plaintiffs in their petition is in regard to alleged
illegal acts of the city council, in that the resolution of
necessity, under which it was sought to levy a tax against
the properties, was for repairing a street by patching, and
that the work undertaken and done was reconstruction, and
not repairs; that the resolution of necessity did not de-
scribe the work undertaken, and that there was collusion
between the city officials and the contractor; that the work
was of a different kind than contemplated in the resolution
of necessity, and worked a fraud on the property owners;
that the city was without jurisdiction, because the proper
steps were not taken by the council to subject plaintiffs'
property to special assessment. The claim is that the con-
tract was void. The answer of defendants was a denial of
the allegations of the petition, except as to certain formal
parts which were admitted, and an affirmative plea of an
estoppel, based upon the alleged fact that plaintiffs had full
knowledge of the work as it progressed, and all facts in re-
gard thereto, and failed to make any objection to the work
until after it had been done and the improvement com-

pleted. There was a trial on the merits, and a decree for plaintiffs. The defendants appeal.—*Reversed.*

*H. W. Byers, Eskil C. Carlson, Earl M. Steer, M. H. Cohen* and *E. J. Kelly,* for appellants.

*Parson & Mills,* for appellees.

PRESTON, J.—1. The basis of the trial court's finding was that it is not within the power of the city to levy. a special assessment for work that is not of the character denominated in the resolution of necessity; that this was a jurisdictional defect; and that, therefore, a court of equity has power to enjoin the levying of a tax to pay for such improvement.

MUNICIPAL
CORPORATIONS:
public im-
provements:
jurisdiction:
ordering "re-
pairs" and
performing
"reconstruc-
tion": effect:
injunction.

This is not a case where it is claimed that the contractor has failed to comply substantially with his contract by doing less work than called for, or that the work and materials are of an inferior quality. There is no claim that the pavement as completed is not a good pavement. It is asserted by one side, and not denied by the other, that it is probably now the best pavement in the city. The complaint is substantially that the city council, or the contractor, did more work under the pretended authority of the contract and proceeding upon which the same is based than said proceedings and contract warranted; that, in ordering the improvement, the council contemplated the removal of only a part of the asphalt surface, whereas the work, as actually done, came so near to a removal of the entire asphalt surface as to amount to a resurfacing or reconstruction; and that this was not within the contemplated action of the council, of which appellees had notice; and that, therefore, the entire contract is thereby vitiated and void, and no assessment can be levied thereunder.

Grand Avenue is one of the principal business and residence streets in the city. It extends entirely through the

city, from east to west.  That part of said street involved in
this appeal is used entirely as a boulevard, or residence
street, and is 44 feet wide between the curbs.  The dis-
tance from the west line of Nineteenth Street to the east line
of Twenty-eighth Street is 3,157 feet.  Prior to the improve-
ment in question, that portion of the street involved herein
was paved and curbed.  The curbing consisted of an ordi-
nary cement curb, and the pavement, of an asphalt wearing
surface about 2½ inches in thickness, laid on a concrete
base.  It is agreed by all parties that, some time prior to
the improvement in question, the asphalt wearing surface
had become, at least to some extent, worn, and contained
holes, waves and other defects.

On April 14, 1915, a resolution of necessity was intro-
duced in the city council, which was duly passed on May
12th, and notice of the pendency of said resolution given.
The material part of such resolution is as follows:

"That it is deemed advisable and necessary to make
improvements by repairing by patching with sheet asphalt,
consisting of 1½ inches of wearing surface, and 1 inch of
binder course, upon the present concrete foundation, the
foundation to be prepared and the paving to be constructed
in accordance with specifications furnished by the city en-
gineer and approved by the city council of Des Moines,
Iowa, the following named streets and parts of streets, to
wit:"   (Then follows the description of that part of the
street before set out.)

Specifications were filed May 19, 1915, and on that
date, the council passed a resolution ordering the construct-
ing of said improvement.  The essential parts of this reso-
lution are as follows:

"Be it resolved by the city council of the City of Des
Moines: That, pursuant to a resolution of necessity, pro-
posed at a meeting of the city council on the 14th day of
April, 1915, and duly passed the 12th day of May, 1915,

it is hereby ordered and directed upon motion of this coun-
cil, without petition of property owners, that the following
improvement be constructed in the manner specified in the
said resolution of necessity, as passed, to wit: Repairing
by patching with sheet asphalt, consisting of 1½ inches of
wearing surface and 1 inch of binder course, upon the
present concrete foundation, Grand Avenue from the west
line of Nineteenth Street to the east line of Twenty-eighth
Street."

Thereafter, bids were advertised for as provided by
law, and the contract awarded to defendants Horrabin &
Co., on July 27, 1915. The specifications were referred to
in the contract and made a part thereof. The material
part of said contract is as follows:

"This contract, made and entered into this 27th day
of July, 1915, by and between James Horrabin & Co.,
party of the first part, and the city of Des Moines, in the
county of Polk, and state of Iowa, party of the second part,
witnesseth: That the said party of the first part hereby
agrees to furnish at his own expense all necessary material
and labor, and to construct the improvement hereinafter
designated, in a thorough, substantial and workmanlike
manner, and in strict compliance with the requirements
of this contract and of the specifications and plans herein-
after set out or referred to, or hereto attached, to the sat-
isfaction and approval of the city engineer and the super-
intendent of department of streets and public improvements
of the city of Des Moines, to wit: Repairing by patching
with sheet asphalt consisting of 1½ inches of wearing sur-
fact and a 1 inch binder course upon the present concrete
foundation, Grand Avenue from the west line of 19th
Street to the east line of 28th Street, 9,000 square yards,
more or less. The party of the first part shall begin said
work at such point as the superintendent of the depart-
ment of streets and public improvements may direct, and

shall conform to the directions of said superintendent as to the order in which the several parts of said work shall be done and the mode of performing the same."

The instructions to bidders, which formed a part of the specifications, provided, among other things:

"The work to be done under this contract will consist of the repairing and patching Grand Avenue from the west line of Nineteenth Street to the east line of Twenty-eighth Street with sheet asphalt, consisting of 1½ inches of wearing surface and 1 inch of binder course upon the present concrete foundation. The amount of work to be done is the repairing and patching of about 9,000 square yards of pavement, to be assessed against the abutting property."

Provision was made for repairing depressions or holes in the concrete base, and some minor repairs of this character were made to the foundation itself, but we do not understand appellants to complain in argument of this.

One paragraph of the general specifications provides:

"The work shall be commenced at such a place and prosecuted in such a direction as the superintendent of the department of streets and public improvements, or the city engineer, may direct. Sidewalks and gutters must be kept open and unobstructed at all times."

Attached to the specifications, which were approved by the city council by resolution adopted May 19, 1915, was a plat of said improvement. This plat contains the following notation:

"Notes. Parts to be repaired to be designated by the city engineer."

And further:

"Plat for paving repair, Grand Avenue, Nineteenth Street to Twenty-eighth Street. Rec. No. 727. 5—19—15. Estimated 9,000 square yards."

Early in August, 1915, the defendant contractor began

the work, under the provisions of the contract before referred to.    The work was completed about August 28, 1915. All the work done by the contractor was under the direct supervision of one of the city engineers.    The extent of the work done by the contractor is shown on a plat which is set out in the record.    In a general way, the plat shows that the contractor removed the asphalt surface the full width of the street from the east line of Twenty-eighth Street east to a point about 390 feet west of the west line of Nineteenth Street; that is, the full length of the street provided in the contract, except the east 390 feet thereof. In the 390 feet just referred to, a portion of the asphalt surface in the middle of the street was removed, and the remaining part of the surface left intact.    The plat shows how much was taken up and how much was left in this 390-foot space.    The total yards of asphalt were more than had been estimated, and comprised 13,819 yards.    It had been estimated that the amount of surface to be relaid would be about 9,000 square yards.    The condition of the pavement prior to the time the work in question was done is in dispute.    Some of the witnesses had not made an examination of the pavement, but gave their recollection of the condition from having passed over it.    We shall refer to this testimony as briefly as may be.    Witnesses for plaintiff testify:

One witness for plaintiff testified that there were several places where the asphalt was in waves, transverse waves, running either directly or diagonally across the street, or a portion of it, and that near the curb there were longitudinal waves and places where the asphalt had been raised in little ridges; that to put in percentage the defective portion would be difficult, but he would say possibly 10 per cent, maybe 20 per cent.    This witness was an attorney.

Another witness, a furniture dealer, thinks that the

pavement for the entire distance between Nineteenth and Twenty-eighth Streets was 90 per cent good, and that a total of 10 per cent for repairs or patches would make it a good pavement.

Another witness, a physician, says there were more rough places and holes where the pavement was worn out; small places; can't tell the area of the largest; one place was 8 or 10 feet wide, and perhaps longer than that; that he means the surface was broken and worn out.

Another witness remembers the location of some of the imperfections, but could not name all of them; that most of them were waves, although there were places where there were holes that had been repaired by being cut out by the city and repaired by laying brick, making the surface flush with the balance of the asphalt.

Another witness says there were some holes along the curb, but not in the center of the street; that he did not know of any depressions there; these were 2 or 3 inches deep.

Another witness says there were not to exceed 30 holes in the pavement on the whole street.

Another witness says that the pavement in the middle of the street for almost the entire distance was good; that the breadth of the good pavement varied—he thinks it was approximately 20 feet wide.   At the side of this, there were places where the pavement was good and places where there were holes or rough spots; he thinks the good pavement would predominate.

Another witness says the worst part of the pavement was along the north side of Twenty-seventh or Twenty-eighth Street; that at that point there was pavement you would want to miss; that there was plenty of room to drive and a good track; at Twenty-eighth Street, he says he would call that a bad pavement; thinks that it would not be more than 1 or 2 per cent of the pavement out of

repair. This witness was an attorney. Such is the general tenor of the testimony for plaintiffs.

A witness for defendant says that the holes and defects and rolls were very largely distributed over the entire pavement; the worst holes were from Twenty-eighth Street east, to about Twenty-fifth or Twenty-sixth Street; that there were 3 or 4 blocks where the holes were very bad; that there were possibly some small portions of the pavement that were in good condition; that he would think at least 40 per cent of the pavement, and possibly more, was in bad condition.

Another witness says he thinks that 75 or 80 per cent of the pavement was absolutely bad, and then there were little patches in between the bad places; describes the appearance as being holes, indentures, waves and rough places.

Another witness thinks that, taking into consideration the general area covered by the waves and the holes and the small intervening stops which in many places were between the waves and holes, there was at least 50 per cent of the paving bad.

Substantially all the witnesses concede that something was necessary to be done to improve the condition of the street. One of plaintiffs' witnesses says that he saw the resolution of necessity as to what was proposed to be done, and says that he made no objections because it was exactly what they wanted; that the pavement should have been repaired and the places should have been fixed because Grand Avenue is one of the great streets of the city, and there is an immense amount of traffic over it, and that it should be kept in repair. Others describe the extent of the traffic over the street.

The city engineer testified that, when he drew the plans and specifications, he estimated that 75 per cent of the wearing surface of the pavement would have to be

removed. As before stated, his estimate of the amount of surface to be relaid would be about 9,000 yards. It was more than that. And he says that, in cutting into the pavement, it did not divulge anything new that was not apparent upon the surface; that he expected it to be rotten, which it was; that, if one third is gone, the whole street should be resurfaced.

The engineer in charge of the work testifies:

"There was not any pavement on west end of Grand Avenue torn up that in my judgment was a pavement of such an extent that it should have been permitted to remain in the street."

One of the city inspectors testifies:

"I have had quite a bit of experience in that line, and in my judgment there was about 90 per cent of it that ought to be torn out."

Another witness, a civil engineer, says:

"If the street showed evidence of between 40 and 75 per cent being in that condition, I would certainly take the wearing surface up, in order to get a good job. If, in place of the holes, a portion of that 40 or 50 per cent are convolutions or rolls, I would take it up."

Appellees' contention is that the work done in the instant case was not repairs, but reconstruction, at least as to a part of the work, although we do not understand them to so claim as to the east 390 feet of this pavement, which was in fact patched or repaired, even under appellees' contention; as to the rest, they argue that there is a difference between repairs and reconstruction.

Prior to the Act of the Thirty-fifth General Assembly amending Section 751, Code, 1897, cities and towns had power to repair streets, the cost of which should be paid for in some other manner than by assessment against property. Section 792, Code, 1897, gave cities the power to make and reconstruct street improvements and assess the

cost against abutting property. By the amendment to Sec-
tion 751, passed by the thirty-fifth general assembly, repairs
might be paid for by assessing abutting' property in the
same manner that was permitted for original construction
or reconstruction under Section 792. By the thirty-sixth
general assembly, Section 751 was further amended. As
to this last amendment, appellees contend that, as this pro-
vides that, in case of extension, repairs and improvements,
if it is desired to assess adjacent property, it shall be des-
ignated and determined by the council in the ordinance or
resolution ordering the improvement, and that the right to
assess on the property benefited in the case of repairs was
made dependent on the formation of the district or desig-
nation of district in which property was to be assessed, the
power granted, to assess for extensions covers repairs. This
we do not determine in this case, for the reason that both
the resolution of necessity and the resolution ordering the
improvement did designate the property to be assessed.
These provisions are that the expense of making the improve-
ment in question is to be assessed upon a valuation to be
fixed by the city council against all lots and parcels of land,
according to area, abutting thereon, and including one half
of the privately owned property between the streets so pro-
posed to be improved and the next street, whether abutting
upon said street or not; but not to include privately owned
property situated more than 300 feet from the street pro-
posed to be improved thereunder, etc. From the foregoing,
it will be seen that appellees concede that, under the law
as it stood at the time the improvement in question was
made, the law gave the city power to make and reconstruct
street improvements and assess the benefits thereof to
abutting property, and that the statute as amended gave
to the city the right to make repairs on streets and assess
the cost thereof to abutting property. As before stated,
the contention here is that the city proceeded to make re-

pairs, but in fact made a reconstruction. But under the law, the city had jurisdiction and authority given it to do either or both, provided the proper jurisdictional steps were taken as provided by statute. This is not a case where the city attempted to do something which the law did not give it any power or right to do. The cases cited by appellees on the question as to the distinction between repairs and reconstruction were decided prior to the amendments to Section 751 of the statute. They cite on this, *Fuchs v. City of Cedar Rapids*, 158 Iowa 392; *Farraher v. City of Keokuk*, 111 Iowa 310; *Gallaher v. Garland*, 126 Iowa 206.

In the *Fuchs* case, most strongly relied on by appellees, the question was as to whether the improvement planned constituted a reconstruction or repair. If it was a reconstruction, the council had jurisdiction to order it, under the law. If it was a repair, the council had no jurisdiction to order it, under the law as it then stood; so that the case turned upon the question as to whether the city council had jurisdiction.

So, too, in the *Farraher* case, which turned on the question as to whether or not the work done was a repair or a reconstruction of a sidewalk.

In the *Gallaher* case, it was held that the city had no authority to assess for ordinary grading, and that because, under the record in that case, the bids and contract were for a lump sum, and the grading cost could not be separated from the other, the assessment was invalid.

In *McCain v. City of Des Moines*, 128 Iowa 331, the complaint was that the work was not constructed according to contract. Our attention is called by appellants to the fact that these last two cases were decided before the enactment of the statute giving the right to appeal from the levy of special assessments.

2. The pivotal point in this case is whether the proceedings of the city council are void so that an injunction

will lie, or whether the property owner should be left to the remedy provided by law by way of objection before the city council and appeal. Appellees' contention is that, because, as they say, the work was reconstruction and not repair, the council had no jurisdiction, and that an injunction would lie. In support of this proposition, they cite *Clifton Land Co. v. City of Des Moines*, 144 Iowa 625; *Gallaher v. Garland*, supra; *Brandirff v. Harrison County*, 50 Iowa 164; *Fort Dodge E. L. & P. Co. v. City of Ft. Dodge*, 115 Iowa 568; *Beebe v. Magoun*, 122 Iowa 94; *McCain v. City of Des Moines*, supra; also *Zalesky v. City of Cedar Rapids*, 118 Iowa 714, and the *Gallaher* case, to the point that, when there is no jurisdiction to proceed, no valid assessment can be made.

We have seen that, at the time of this improvement, the city had authority to either reconstruct or repair, and it is quite clear that, under the resolution of necessity and the resolution ordering the improvement and the contract therefor, the city had jurisdiction and power to do the work of "repairing by patching," as therein provided. We think that jurisdiction was not lost because a part of the work may have been, as contended by appellees, more than repairing by patching. Clearly, the 390 feet before referred to was repairing by patching, even under appellees' contention, and for that reason the injunction should not have been granted; but, as to the rest of the work, it was of the same general character—that is, it was not like putting in a sewer under a paving resolution, as contended by appellees. The appellees could have raised the same questions as now presented by objections before the city council, or on appeal to the district court. The provisions in reference thereto are very broad. The question could have been raised as to whether any assessment should be made against any of the several properties or the amount thereof. It should be said here that no assessment had been levied in this case. A

schedule had been prepared, but the injunction was served before any further steps were taken. It cannot be said how much the city council would have assessed against the abutting property, or whether any assessment would have been made, had proper objection been made.

As said, we are of opinion that the mere fact that more work or better work was done than called for by the contract did not divest the council of jurisdiction, it having once attached by the passage of the resolutions. Suppose the work or material was of an inferior quality, and in that respect the resolutions and contract had not been complied with; this would be a matter for the determination of the council, or on appeal, and would not divest the council of jurisdiction. As before pointed out, there may appear to be some conflict in the authorities, but this is, to some extent, because of the changes in the statutes; and it may be that some of the earlier cases have been, to some extent, modified by later cases. It is contended by appellees that Section 810, Supplemental Supplement, 1915, providing for the resolution of necessity, is the basis of the jurisdiction of the city council in providing for the assessment of improvements to abutting and adjacent property owners, and that the purpose of the resolution is to advise the owners of property of the proposed improvement, so that those whose property will be liable to assessment therefor may appear before the city council and make objection thereto, if they so desire. These steps were taken, and the proceedings did confer upon the city council jurisdiction to make repairs by patching.

In *Durst v. City of Des Moines,* 164 Iowa 82, we said:

"Jurisdiction to make special assessments for the cost of an improvement so authorized and constructed is obtained by publication of notice of the time when and place where objections thereto may be presented and considered. Code, Sec. 823. These notices being given in the statutory

manner, all property owners are presumed to have cogni-
zance of the details involved in the preparation for and
execution of the work of improvement, and, if there be any
ground of complaint on account of errors or irregularities
in the special assessments, or on account of any of the prior
notices or proceedings leading up to such assessments, the
party aggrieved must appear before the city council and
make the objection on which he relies, and, failing so to do,
his objections are deemed to have been waived. Code, Secs.
823 and 824. The only exception to this rule which the
statute recognizes is where **fraud** is shown."

It is appellants' contention that, because the contrac-
tor and engineer, in doing the work, did more as to a part
of it than provided in the resolutions and contract, this
was a mere irregularity, that must be taken advantage of,
if at all, upon objections to the council or appeal to the dis-
trict court. As to the alleged variance between the work
and the contract, we said in *Cheny v. City of Fort Dodge,*
157 Iowa 250, 255:

"Under these statutory provisions we have recently
held that the question whether the variance between the
improvement, as constructed, and that provided for in the
preliminary proceedings is sufficient to invalidate the as-
sessment is an appropriate matter of inquiry for the city
council, and that the mere fact of such variance, without
regard to its materiality and extent, does not deprive the
council of jurisdiction to make the assessment, the remedy
of the property owners being by objection before the council
and by appeal from its action. *Shaver v. Turner Improve-
ment Co.,* 155 Iowa 492. In that case the decisions of this
court particularly relied upon for appellee are reviewed, and
the case of *Hubbell v. Bennett,* 130 Iowa 66, so far as it
was therein held that any departure from the plans and
specifications under which the contract was made deprived

the council of jurisdiction to levy the assessment, was over-ruled."

In *Hubbell v. City of Des Moines,* 168 Iowa 418, 424, an injunction case to enjoin the collection of special assessments, we said:

"The entire matter relates, not to the power of the city council in making the improvement, but to the exercise of that power—the manner of accomplishing that which the legislature had authorized that body to do—and therefore was not jurisdictional. This was pointed out in *Shaver v. Turner Improvement Co.,* 155 Iowa 492, and plainly is one of those matters to which objection must be interposed, if at all, before the city council, and if not there made is to be deemed waived. As observed in *Cheny v. City of Fort Dodge,* 157 Iowa 250, the purpose of the statutory provisions is 'to relegate the property owner to his remedy by objection and appeal in all cases where the city council has not exceeded its jurisdiction; and the holding of the *Shaver* case just cited is, in effect, that in the case of a mere departure from the plans and specifications, not substantially changing the nature of the improvement, the council does not lose jurisdiction to make assessment for the improvement as constructed, but may, on objections, grant the property owner such relief as he should have, and that on appeal the district court may review the action of the council and grant the relief which should have been granted by it.' Such remedy is exclusive and the objection was not available to plaintiffs in this suit."

In *Clifton Land Co. v. City of Des Moines,* 144 Iowa 625, at 629, we said:

"Save only in cases where the order or proceedings sought to be enjoined is absolutely void—not voidable merely—it is well settled that a special remedy created by statute is exclusive as to all the controversies coming within its scope, and if a party to whom such remedy is given

fails to take advantage of it, he cannot resort to equity for relief. (Citing cases.) The remedy by appeal was broad and ample, the district court being given by the statute above cited full power to hear and try every objection properly raised, and to set aside, vacate, or modify the assessment complained of, and generally to make such order as the city council ought to have made in the premises, or remand the proceedings with proper orders and directions for further proceedings in harmony with the findings of the court."

In the same case, referring to the *Zalesky* case and perhaps some other cases cited by the appellees, we said:

"But, without in any manner now questioning the correctness of the result reached in those cases, we are constrained to say that, in so far as the discussions therein tend to sustain the proposition that, where the jurisdiction of the city has once attached, a defect or omission subsequently occurring in the proceedings, and for which the statutory appeal furnishes ample remedy, may be made the grounds of proceedings in equity for an injunction against the assessment, they cannot be approved."

3. It is claimed by appellees that there was fraud and collusion between the contractor and some of the officers of the city as to that part of the pavement which appellees claim was reconstruction. But the record does not show that anything done would justify the inference of fraud. But if it was, it is not a case where plaintiffs did not discover the alleged variance between the work and the contract until it was too late to show cause against the assessment. This action was brought before any assessment was made, and the facts were then known to plaintiffs, and in time to have filed objections before the council and raised the questions they now seek to present in this action. As bearing upon this, see *Clifton Land Co. v. City of Des Moines,* supra.

Some other matters are argued, but those discussed are controlling and decisive of the case.

For the reasons given, the judgment and decree of the district court is reversed, and the case is remanded, with directions to the district court to dismiss the petition.— *Reversed and Remanded.*

GAYNOR, C. J., LADD and EVANS, JJ., concur.