A. E. NOBLE et al., Appellants, v. CITY OF DES MOINES et al., Appellees.

**MUNICIPAL CORPORATIONS:** Public . Improvements—Repairs.
1   Though the resolution and the contract of a city were for the repair of paving or patching, and part of the work done was in the nature of resurfacing, jurisdiction was not defeated, so as to render void the assessments made therefor.

**MUNICIPAL CORPORATIONS:** Assessment of Benefits—Changing
2   Assessments. There being no basis in the evidence for any other assessment than those confirmed by the district court on appeal, as made by a city council, the Supreme Court cannot make any different assessment, nor direct the district court or the city council to do so.

**MUNICIPAL CORPORATIONS:** Assessment of Benefits—Fraud. On
3   objection to assessments, fraud in the matter of street paving cannot be presumed. Evidence reviewed, and held insufficient to show any fraud.

*Appeal from Polk District Court.*—JOSEPH E. MEYER, Judge.

OCTOBER 2, 1919.

REHEARING DENIED MARCH 11, 1921.

THIS is an appeal by plaintiffs, or objectors, from the action of the district court in overruling appellants' objections to paving assessments, and in confirming the assessment made by the

city council. The case was tried as in equity. The plaintiffs appeal.—*Affirmed.*

*Dale & Harvison,* for appellants.

*H. W. Byers, Guy A. Miller, D. Cole McMartin,* and *E. J. Kelley,* for appellees.

PRESTON, J.—It appears that Kingman Boulevard is a residence street in the northwest part of Des Moines, running east and west from Cottage Grove Avenue to Forty-fifth Street. It is 56 feet wide. A curbed strip 20 feet wide in the middle of the street is reserved for park purposes, leaving 18 feet on each side of the reserved strip. The street in question was paved originally about 1908, with an asphalt surface on a concrete base. By a new or amended resolution of necessity, four or five blocks were omitted, so that this case concerns property between Twenty-fifth Street and Thirty-first Street. In the spring of 1915, the original paving had become worn in places, and in need of repairs, and the council passed resolutions for repairs by patching, as hereinafter stated. A part of the entire top surface was removed, and repaired by a new surface, but this was not done the entire distance. There was no change or repair in the concrete foundation; only the old surface was taken off, down to the concrete. The amended resolution was passed May 19, 1915, and readopted May 26, 1915. May 19, 1915, was fixed by the council as a time for considering objections to said proposed resolution; but no objections were filed. The contract was let May 26, 1915. Bids were advertised for in accordance with the resolution, and the contract let and the work begun. Some of the property owners made what appellants call informal, verbal objections, as the work progressed. As to the character of such objections, one witness says that he had some talk with the parties engaged in the work; that there were some workmen there with their tools, picking up the boulevard at Twenty-fifth Street, and he asked them what they were going•to do, and they said they were going to repair it. Another witness says that, while the work was being done, he had a talk with the overseer on the job, who was boss of the tearing-up gang; that, when they

commenced the work, he went out and asked them what they were calculating to do, and made objections, then telephoned down to the city hall concerning it; that, when witness was talking with the overseer, and was objecting, the overseer said that the paving was worn out, and witness told him that he was mistaken. Witness concedes, however, that, as he puts it, there were a few bad places. We are referred to the testimony of three or four other witnesses who made objections, but those stated are illustrative. After the work was completed, notice was given of the proposed plat and schedule of assessments, and the time fixed; whereupon appellants filed written objections in the office of the clerk. The objections were overruled, and the plat and schedule of assessments were approved and confirmed. Then followed the appeal to the district court.

1. This case was inaugurated at about the same time as the case of *Ellyson v. City of Des Moines*, 179 Iowa 882. The facts and issues are very similar. A considerable part of the argument in this case is devoted to the form of the resolu-

1. MUNICIPAL COR-
PORATIONS: pub-
lic improvements:
repairs.

tion of necessity, contract, etc., in that such documents provide for repairing by patching; and the claim is that this was not done, for that the paving was resurfaced. Different claims are made and based on this fact. One claim is that there was no jurisdiction, and that the assessments are, therefore, void. Another claim is that the contractor, by resurfacing, abandoned the contract, and that there was not a substantial compliance with the contract and the resolutions of necessity, the notice, etc., and that, therefore, the council should not have made the assessments. Another claim is that because of the resurfacing instead of patching, and the alleged abandonment of the contract, and the use of inferior materials, and the negligence of the city officers, there was fraud on the part of the contractor, the mayor, and substantially all the city officers, and the council. All these questions, except the question of fraud, were considered and determined in the *Ellyson* case, and against the contention of appellants; and as to all such questions we adhere to the ruling in the *Ellyson* case, and we think it is controlling on nearly all the questions now presented.

It is thought by appellants that the *Ellyson* case is not controlling, because that case was an injunction case, and the instant

case is an appeal to the district court from the action of the city council in making the assessment. But the precise question was made there, as here, that, because of the form of the resolutions of necessity, the contract, etc., the action of the council in making the assessment was entirely void, so that injunction would lie. The opinion in the *Ellyson* case recites that the pivotal point in the case was whether the proceedings of the council were void. It is claimed in this case that, for the same reason, the proceedings were void, and that, therefore, the city council was without jurisdiction to make the assessment. The case of *Fuchs v. City of Cedar Rapids,* 158 Iowa 392, and other cases, are cited and relied upon by appellants as to the distinction between resurfacing or reconstruction and repairs by patching; but, as pointed out in the *Ellyson* case, there has been a change in the statute since the determination of the *Fuchs* case. Since the form of the resolution of necessity, contract, etc., and the record, are the same in this case as in the *Ellyson* case, we shall not set out the record herein, and we shall attempt to abbreviate this opinion as much as may be, as to the points covered by the *Ellyson* case.

The city council had the power to pass such resolutions as were passed, and, as pointed out in the *Ellyson* case, even though the work was not done precisely in accordance with the resolutions, this does not defeat jurisdiction. Under our prior holding, and under the record in this case, it is shown without dispute that every necessary jurisdictional step was taken by the council. It may be, as contended by appellants, that a resolution to build a sewer would not justify the work of paving thereunder; but that is not the situation here, as pointed out in the *Ellyson* case.

2.    There are one or two other points argued by appellant which were not in the *Ellyson* case. One of these is that, under Code Section 839, the district court, on appeal from the action of a city council, approving an assessment, has

2. MUNICIPAL COR- full jurisdiction, and the power to determine all
PORATIONS: as-
sessment of bene- questions touching the validity of such assess-
fits: changing as-
sessments. ment, or the amount thereof; also, to make such assessment as should have been made, or direct the making of such assessment by the council. They cite *Early v. City of Fort Dodge,* 136 Iowa 187, where the assessment was reduced on ap-

peal. They cite, also, *Clifton Land Co. v. City of Des Moines,* 144 Iowa 625.

Appellees do not dispute this legal proposition. We are not quite sure that we understand just what appellants' claim is as to this. We do understand, and appellants state clearly, that they claim that the assessments are entirely void, and that, therefore, no assessment should have been made. If this is all there is to it, then we have no question but that the district court, or this court now, could, under the statute and authorities, determine all questions touching the validity thereof, and set it aside entirely, if, under the record and law, that would be justified. If, however, appellants make the further claim that the district court or this court has authority to determine the amount of the assessment, then, as to that, we say that we have no doubt that there is such power in the trial court and in this court, provided there is evidence upon which to base an assessment for a different amount. If it is the thought of counsel for appellants that the trial court or this court should reduce the amount of the assessment because the cost of repairs by patching would be less than that of resurfacing, and that only the amount of the cost or benefits should be assessed, as though the work was actually done by patching, then we have to say that appellants nowhere point out in argument any testimony showing what such cost or benefits would be, and we discover no such evidence in the record. So that there is no basis in the evidence upon which this court or the district court could make assessments in any other amounts than those fixed by the council. The evidence seems to have been directed more to the condition of the paving and to questions of jurisdiction, etc.

There is evidence in the record, and it is argued by appellants, that it is worth more to repair by patching than to resurface. But we suppose by this is meant that it would cost more for the same amount of work. If appellants mean literally that it would cost more for patching than to resurface, then it would seem that appellants have no cause for complaint, so far as the amount is concerned, if it was proper to make any assessment; but the evidence is not directed to the question as to what the cost would be for the different lots, or what the bene-

fits would be if the repairs had been made by patching. Since there is no basis in the evidence for assessments in any other amounts, we cannot, of course, make any different assessment, nor direct the district court or city council to do so. We do not review in equity cases, and send the matter back for an entire new trial, as in a law action.

3. The alleged fraud relied on is that the resolution of necessity, the notice, the contract, and the confirmation of the assessment, taken in connection with the manner in which the work was done, and the alleged abandonment of the contract by the contractor, in that he did not make the repairs by patching, constitute a fraud upon plaintiffs; also, that the negligence of the council and the superintendent of streets and the city engineer constitutes a fraud; also, the approval of the assessments by the council, after knowledge of the facts. We shall not refer again to some of these matters,—that is, the resolution, notice, and that the work was done by patching, etc.,—because these have been disposed of by the prior discussion of such matters. Clearly, there was no fraud in regard to those. It is thought that the city officers did not give due attention to the work as it progressed; but there is no evidence of bad faith or collusion on the part of any of the officers. It is charged that, in the light of subsequent events, there was an understanding between the contractor and the superintendent of streets, or the city engineer, that resurfacing was to be done, instead of repairs, and that it would be easy for the engineer to indicate to the successful bidder that he would not be called upon to make inconsiderable repairs at places pointed out by the engineer, but that, instead thereof, the whole surface would be removed and reconstructed; or that it would be easy for the engineer to indicate to other bidders that the improvement would consist of repairs at places indicated by the engineer; but counsel for appellants say that whether any such action was had, they do not know, except from the acts of the parties themselves, and they then seek to draw the conclusion that there was collusion and fraud. But the trouble about it is

3. MUNICIPAL COR-
PORATIONS: as-
sessment of bene-
fits: fraud.

that fraud is not presumed, and there is no evidence to show that any of these things complained of were done. It is further argued by counsel for appellants that:

"When the protests came before the whole council, then they were each and all charged with the duty to see to it that the contractor had, in good faith, substantially complied with the contract; that they should have upheld the protests of these plaintiffs; that, instead of so doing, they approved these doings, and made themselves *particeps criminis* with Horrabin, in the fraud he had perpetrated; that they had full power in their hands to protect the citizens, and refused to do it."

But there was no evidence of fraudulent conduct, as in the cited case of *Atkinson v. City of Webster City*, 177 Iowa 659. There is no evidence that the council were not acting in good faith, and exercising their judgment.

It is also contended that the contractor did not perform the work in a proper way, and furnish suitable material, as required by his contract, and that this is evidenced by the fact that there were a few places worn in the new surfacing, and within the five years covered by the guaranty in the contract and the bond. But we think that the council were justified in finding that there was a substantial compliance with the contract, and that, therefore, they were authorized to make the assessments. As said in the *Atkinson* case, supra, even though there might be a liability on the bond for defects appearing in the pavement during the five-year period, this would not obviate the necessity for a substantial compliance with the contract, before the cost of the improvement may be assessed against the property. But in the *Atkinson* case, it was held that, under the evidence, there had not been a substantial compliance with the contract.

There may be some other minor matters argued,—for instance, such as that the assessment was inequitable; but these have been covered by the points discussed.

Without extending the opinion further, we reach the conclusion that the decree of the trial court was right, and it is, therefore,—*Affirmed*.

LADD, C. J., EVANS and SALINGER, JJ., concur.